EVICKS, n.k.a. Koeppen, Appellee,

v.

EVICKS, Appellant.

[Cite as *Evicks v. Evicks* (1992), 79 Ohio App.3d 657.]

Court of Appeals of Ohio,
Lawrence County.

No. 1955.

Decided April 28, 1992.

*Moore, Wolfe & Bentley* and *Richard F. Bentley,* for appellee.

*Collier & Collier* and *J.B. Collier, Jr.,* for appellant.

*Per Curiam.*

This is an appeal from a judgment entered by the Lawrence County Court of Common Pleas granting a divorce to Connie S. Evicks, plaintiff-appellee, and Lynn T. Evicks, defendant-appellant, on the grounds that appellee was guilty of adultery and appellant was guilty of gross neglect of duty. The trial court entry also granted custody of the parties' minor child, Adam, to appellee, ordered appellant to pay child support, and granted visitation to appellant.

Appellant's sole assignment of error provides as follows:

"The trial court erred in adopting the referee's recommendation to award custody of the parties' minor child to appellee without hearing additional evidence concerning the allegations of fraud, deceit and perjury committed by appellee."

The parties were married on June 20, 1986. Their son, Adam Evicks, was born one year later. Subsequently, the parties separated and appellee filed a complaint for divorce on the basis that appellant had been guilty of gross neglect of duty. Appellee also prayed for custody of Adam, child support, and a division of marital property. Appellant filed an answer denying that he was guilty of gross neglect of duty and additionally filed a counterclaim and an amended counterclaim praying for divorce on the grounds that appellee had been guilty of gross neglect of duty, extreme cruelty, and adultery. Appellant also requested custody of Adam, child support, and an equitable distribution of the parties' assets.

In December 1989, the court-appointed referee conducted a hearing at which appellee admitted to having sexual intercourse with Kevin Koeppen once about two months following her separation from appellant. Appellee further claimed that she and Koeppen were merely friends. Appellee testified that she could be pregnant with another child at the time of the hearing. On January 19, 1990, the referee issued a report which recommended that (1) appellee be granted a divorce on the basis that appellant had been guilty of gross neglect of duty, (2) appellee be awarded custody of Adam, (3) appellant be granted visitation with Adam, (4) appellant pay appellee $70 per week in child support, and (5) the parties' house be sold, with $5,000 in proceeds to go to appellant's father and the remainder to be divided equally between the parties.

Appellant filed objections to the referee's report, asserting that custody of Adam should not be awarded to appellee because appellee misled the referee and committed fraud in not advising him that she was pregnant with another child. Appellant also objected to the referee's failure to find that appellee had

committed adultery. Appellant additionally requested a full evidentiary hearing on the objections, claiming that he was presumed to be the unborn child's father. Appellee filed a memorandum in opposition to appellant's motion for an evidentiary hearing, which claimed that based upon the new child's due date, it was "not scientifically possible" for appellant to be the unborn child's father. The referee issued a report recommending that an evidentiary hearing concerning appellant's allegations of fraud and misrepresentation be held. The referee noted that his earlier recommendations were based upon his assessment of appellee's credibility, which he now seriously questioned because although appellee claimed she was only friends with Koeppen at the hearing, she married him six days after the initial referee's report was filed.

Subsequently, appellant filed a motion requesting visitation with appellee's new child. Kevin Koeppen filed a motion to intervene. At a hearing on these motions, the parties appeared to agree that the child would have to be at least six months old before a blood test for purposes of determining the child's natural father could be administered. The trial court, on May 1, 1990, filed an entry granting each party a divorce, awarding custody of Adam to appellee, ordering visitation with Adam for appellant, and awarding child support to appellee. The trial court additionally allowed visitation for appellant with appellee's second child and by separate entry allowed Koeppen to intervene in the action. The trial court's May 1, 1990 entry specified that appellant "shall not be obligated to pay child support from the time of birth of said newborn child until the determination of paternity as the plaintiff has alleged that the defendant is not the father of said child." The trial court made an express determination of no just reason for delay.

 Prior to a consideration of the merits of the instant appeal, we must determine if the entry appealed constitutes a final appealable order. Section 3(B)(2), Article IV of the Ohio Constitution provides that "[c]ourts of appeals shall have such jurisdiction as may be provided by law to review and affirm, modify, or reverse judgments or final orders of the courts of record inferior to the court of appeals within the district * * *." Every final order may be reviewed on appeal. R.C. 2505.03(A). R.C. 2505.02 defines three types of final orders: (1) an order affecting a substantial right in an action which, in effect, determines the action and prevents a judgment; (2) an order affecting a substantial right made in a special proceeding or made upon summary application after judgment; or (3) an order vacating or setting aside a judgment or granting a new trial. *Chef Italiano Corp. v. Kent State Univ.* (1989), 44 Ohio St.3d 86, 87–88, 541 N.E.2d 64, 66–67.

It is axiomatic that subject matter jurisdiction may not be conferred upon a court by agreement of the parties, and may not be waived, and that the lack

thereof is a basis for mandatory *sua sponte* dismissal. *State ex rel. Lawrence Dev. Co. v. Weir* (1983), 11 Ohio App.3d 96, 97, 11 OBR 148, 149, 463 N.E.2d 398, 399; *Wilson v. Patton* (1988), 49 Ohio App.3d 150, 152, 551 N.E.2d 625, 627; see, also, *Fox v. Eaton Corp.* (1976), 48 Ohio St.2d 236, 238, 2 O.O.3d 408, 409, 358 N.E.2d 536, 537. Both parties note on appeal that pursuant to this court's decision in *Tismo v. Tismo* (Aug. 28, 1990), Lawrence App. No. 1917, unreported, 1990 WL 127064, the entry appealed may not constitute a final appealable order. In *Tismo*, at 5, this court held that a "divorce decree which defers attendant issues such as child support for future consideration is not a final appealable order pursuant to R.C. 2505.02 since any temporary harm to the parties is outweighed by the waste of judicial resources resulting from the allowance of an appeal." An express determination of no just reason for delay pursuant to Civ.R. 54(B) would not render such a divorce decree final and appealable because in a divorce case, there are no multiple "claims" for relief. *Id.* at 7–8.

In the case at bar, the trial court deferred the issue of paternity of appellee's second child. Pursuant to R.C. 3105.21, the trial court had a mandatory duty to "make an order for the disposition, care, and maintenance of the children of the marriage." Under R.C. 3111.03(A)(1) and (2), it appears that two conflicting presumptions arguably arise as to the paternity of the parties' second child. R.C. 3111.03(A)(1) provides that appellee's first husband, appellant, is presumed to be the child's father. R.C. 3111.03(A)(2) appears to require a presumption that Koeppen is the father. R.C. 3111.03(B) states that each presumption is rebuttable by clear and convincing evidence. Furthermore, when two or more conflicting presumptions under the statute apply, the trial court should determine which is controlling. Since legal parentage must be decided prior to the issue of custody, *In re Adoption of Reams* (1989), 52 Ohio App.3d 52, 557 N.E.2d 159, it appears that pursuant to *Tismo, supra,* the entry is not a final appealable order.

However, this case presents our court with the opportunity to reanalyze *Tismo* and its arguably harsh application to the facts presently before us. Although *Tismo, supra,* has been followed on several occasions by this court, it has not, as of yet, been explicitly adopted by other Ohio appellate courts. It cannot be reasonably questioned that the entry appealed from, which included a custody determination regarding the parties' first child, affected substantial rights of the parties. See *Tismo,* at 4. The issue is whether the custody determination in this case occurred in a "special proceeding" as that term is used in R.C. 2505.02. Initially, Ohio courts tended to focus on the nature of the proceeding itself to determine whether the order appealed was a legal or equitable action recognized at common law, *i.e.,* nonspecial, or was a special proceeding. See, *e.g., Shon v. Shon* (Aug. 6, 1981), Cuyahoga App. No. 43075,

unreported, 1981 WL 5034, which notes in *dicta* that where a determination of custody was sought in an action for divorce, alimony, and a division of property, an award of custody without the resolution of all issues is not a final appealable order since a divorce is an "action" rather than a "special proceeding." However, in *Amato v. Gen. Motors Corp.* (1981), 67 Ohio St.2d 253, 21 O.O.3d 158, 423 N.E.2d 452, the Ohio Supreme Court apparently shifted the focus from the nature of the proceeding itself to the effect of the particular order being appealed. *Amato* balances the harm to the prompt and orderly disposition of litigation caused by piecemeal appeals against the need for immediate review due to the impracticality of appeal after final judgment. Whiteside, Ohio Appellate Practice (1991) 33, Section T 2.05; see, also, *Dayton Women's Health Ctr. v. Enix* (1990), 52 Ohio St.3d 67, 555 N.E.2d 956; *Russell v. Mercy Hosp.* (1984), 15 Ohio St.3d 37, 15 OBR 136, 472 N.E.2d 695; but, see, *Noble v. Colwell* (1989), 44 Ohio St.3d 92, at 94, 540 N.E.2d 1381, at 1383, where the Ohio Supreme Court noted that the *Amato* balancing test need not be applied where the case "is a straightforward civil action."

In applying the foregoing test, other appellate courts have determined that, in certain circumstances, divorce entries may constitute final, appealable orders although all issues are not resolved. In *Shull v. Shull* (Aug. 9, 1990), Greene App. No. 89CA89, unreported, 1990 WL 115983, the Second District Court of Appeals held that a divorce entry which granted custody of the parties' child but deferred other issues, including the division of marital property, was a final appealable order pursuant to R.C. 2505.02, since it affected substantial rights and was made in a special proceeding. In this regard, Judge Fain, writing for a unanimous court, noted:

"As a threshold matter, we must consider whether we may properly assume appellate jurisdiction in this case. Issues other than child custody, such as the division of marital property, remain pending between the parties. Under normal circumstances, that would preclude an award of custody from becoming a final appealable order. However, *Amato* * * * and cases decided thereafter, have held that an otherwise interlocutory order may constitute a final appealable order if the impracticality of waiting to appeal until the case is concluded in the trial court outweighs the waste of judicial resources and the potential source of delay presented by piecemeal appeals. In the case before us, the trial court has purported to determine Amy's permanent custody. With respect to child custody issues, the interests of the child are paramount. Delay in resolving who shall have permanent custody is ordinarily a source of continuing concern, if not anguish, to the child. We regret that in our disposition of this appeal we have not succeeded in bringing the child custody issue to a definite conclusion (see Parts IV and V, below), but we are convinced that the child's interest in obtaining even an inconclusive appellate

disposition of this issue at this stage is sufficiently overwhelming to justify our assumption of appellate jurisdiction under the test set forth in *Amato, supra.*" *Id.* at 4–5. See, also, *Gordon v. Gordon* (1973), 33 Ohio App.2d 257, 62 O.O.2d 375, 294 N.E.2d 239, where the Third District Court of Appeals stated at 258, 62 O.O.2d at 376, 294 N.E.2d at 241, that "[d]etermination of child custody, whether in conjunction with a divorce decree or in the exercise of the continuing jurisdiction of the divorce court, is a special proceeding."

Similarly, in *Joseph v. Joseph* (Jan. 25, 1988), Stark App. No. CA–7126, unreported, 1988 WL 8490, the Fifth District Court of Appeals held that a divorce entry ordering the liquidation of the parties' business assets but deferring the issue of sustenance alimony constituted a final appealable order because the sale of business assets affected with finality the parties' rights. In so holding, the *Joseph* court stated that orders of custody are generally appealable.

In analyzing the foregoing cases, we are now convinced that the decisions in *Shull, Gordon,* and *Joseph, supra,* are persuasive. Applying *Amato* to the instant case, it is apparent that the parties' first child's interest in obtaining our disposition regarding his custody outweighs the danger of piecemeal appeals or harm to the prompt and orderly disposition of litigation. In essence, our fact situation is even more compelling than *Shull, supra,* since the parties would have to wait until the second child is six months old to conduct a paternity test. Our holding in *Tismo* is not applicable to the facts in this case for several reasons. It is in the older child's best interest to determine the custody issue as quickly as possible. The older child should not remain in "appeals limbo" while waiting an extended period of time for the unborn infant to reach a suitable age for genetic testing. In short, it is undesirable to force the parties and the oldest child to wait until all the issues in the case are resolved before we review the custody order. Here, interests of judicial economy are outweighed by the need for a speedy resolution of custody. In *Tismo,* the availability of a temporary child support order provided a guarantee that no undue harm would come to the child as a result of requiring the court to make a final determination of that issue before appellate review. Having found the decision here to be a final appealable order, we now proceed to the merits of appellant's argument.

 In his sole assignment of error, appellant presents the narrow issue of whether the court abused its discretion by declining to hear additional evidence after appellant filed objections to the referee's report. Civ.R. 53(E)(2) provides:

"Within fourteen days of the filing of the report, a party may serve and file written objections to the referee's report. * * * Upon consideration of the

objections *the court may:* adopt, reject or modify the report; *hear additional evidence;* return the report to the referee with instructions; or hear the matter itself." (Emphasis added.)

The use of the word "may" in the statute indicates the court has discretion to decide whether to hear additional evidence after the parties submit objections to the referee's report. In *Normandy Place Assoc. v. Beyer* (1982), 2 Ohio St.3d 102, 105, 2 OBR 653, 655, 443 N.E.2d 161, 163–164, the court commented on the use of the word "may" in the first sentence of Civ.R. 53(E)(2):

" * * * Had the drafters of the Civil Rules intended that the failure to file objections would preclude appellate review, they could easily have stated so explicitly. Instead, *they chose to employ the word 'may,' which has traditionally been interpreted as merely conferring a right or privilege on a party rather than imposing on him an obligation to act.*" (Emphasis added.)

Generally, in a domestic relations matter, a reviewing court should apply the "abuse of discretion" standard. When deciding whether the court below abused its discretion by failing to hear additional evidence, we must bear in mind judicial interpretations of the term "abuse of discretion." In *Booth v. Booth* (1989), 44 Ohio St.3d 142, 144, 541 N.E.2d 1028, 1030, the court wrote:

"In general, when reviewing the propriety of a trial court's determination in a domestic relations case, this court has always applied the 'abuse of discretion' standard. This has been true in cases reviewing an order relating to alimony, see *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 5 OBR 481, 450 N.E.2d 1140; a division of the marital property, see *Martin v. Martin* (1985), 18 Ohio St.3d 292, 18 OBR 342, 480 N.E.2d 1112; or a custody proceeding, see *Miller v. Miller* (1988), 37 Ohio St.3d 71, 523 N.E.2d 846. Since it is axiomatic that a trial court must have discretion to do what is equitable upon the facts and circumstances of each case, see *Cherry v. Cherry* (1981), 66 Ohio St.2d 348, 355, 20 O.O.3d 318, 322, 421 N.E.2d 1293, 1299, it necessarily follows that a trial court's decision in domestic relations matters should not be disturbed on appeal unless the decision involves more than an error of judgment. * * * As this court has held many times, an ' "abuse of discretion" * * * implies that the court's attitude is unreasonable, arbitrary or unconscionable. * * * ' See, *e.g., Blakemore, supra,* at 219, 5 OBR at 482, 450 N.E.2d at 1142."

Therefore, in the case *sub judice,* we must not reverse the judgment below unless we find the court's decision not to hear additional evidence implies an unreasonable, arbitrary, or unconscionable attitude on the part of the court. Further, when applying the abuse of discretion standard, a reviewing court is

not free to substitute its judgment for that of the trial court. *In re Jane Doe 1* (1991), 57 Ohio St.3d 135, 566 N.E.2d 1181; *Berk v. Matthews* (1990), 53 Ohio St.3d 161, 559 N.E.2d 1301; and *Buckles v. Buckles* (1988), 46 Ohio App.3d 102, 546 N.E.2d 950.

Appellant filed his motion for an evidentiary hearing along with his objections to the referee's report on February 1, 1990. In a memorandum accompanying the objections, appellant wrote:

"The evidence will be that she is currently pregnant and will very soon deliver. This information was kept from the Referee. Needless to say, the ramifications of this pregnancy touched upon every aspect of the divorce. Defendant is presumed to be the father of the unborn child. Additional questions of custody, visitation, support and similar matters should have been addressed at the hearing. *Plaintiff's failure to bring this information forth is tantamount to fraud.*" (Emphasis added.)

In his brief on appeal, appellant allied the pregnancy issue with an issue of appellant's credibility:

"In his objections to the referee's report, Mr. Evicks brought to the court's attention evidence that Mrs. Evicks was pregnant at the time of the final divorce hearing. Indeed, this has never been questioned. Moreover, *this was evidence that had a strong bearing on all aspects of the case, including the issue of Mrs. Evick's credibility.* This evidence was, nonetheless, withheld from the referee and counsel.

"* * * *

"* * * * It is respectfully submitted that because *the credibility of Mrs. Evicks was so important* concerning the issue of custody that it was imperative for the court either to hear additional evidence or at least refer the matter back to the referee for further hearing. * * *

"* * * *

"For the foregoing reasons, it is respectfully urged that it was error for the trial court to adopt the referee's recommendation awarding custody of Adam to his mother without *holding a hearing as to the allegations of fraud, deceit and perjury of Mrs. Evicks * * *.*" (Emphasis added.)

Appellant seeks to convince us that (1) appellee committed "fraud, deceit and perjury" by failing to mention her pregnancy during the December 7, 1989 hearing; (2) appellee's pregnancy has a strong bearing on the case; (3) the alleged "fraud, deceit and perjury" might cause the court to perceive appellee's credibility differently and, consequently, to award custody of the

parties' son, born in 1987, to appellant; and (4) the court abused its discretion by failing to hear evidence of the alleged "fraud, deceit and perjury."

■ In the case *sub judice,* after a review of the record submitted for our consideration and considering the totality of the circumstances, we fail to find an abuse of discretion in the trial court's decision not to hear additional evidence. Although appellee did not volunteer information regarding her pregnancy at the December 7, 1989 hearing, appellant cites no authority that would require appellee to volunteer information or answer a question that no one asked. Nothing in the record indicates appellee's answers to various questions were less than truthful.

We further question whether the pregnancy "has a strong bearing" on this case. At the hearing, appellee freely admitted facts regarding the extramarital relationship. Thus, both parties and the court were aware of appellee's extramarital affair. At the April 4, 1990 hearing to consider objections to the referee's report, the trial court judge stated:

"Gentlemen, as far as the matter on the evidentiary hearing goes, again, reading the transcript, both of the books, the Defendant, or the Plaintiff in this case was asked if she could be pregnant at that time, the time of the hearing. The answer was 'yes' or 'I could be.' The matter was never pursued after that.

" * * *

"I'm not granting a full evidentiary hearing on the objections."

Accordingly, based upon the foregoing reasons, appellant's assignment of error is overruled and the judgment of the trial court is affirmed.

*Judgment affirmed.*

STEPHENSON, HARSHA and PETER B. ABELE, JJ., concur.