Appellant Fred H. Thomas, III, appeals from his convictions in the Summit County Court of Common Pleas. We affirm.
Appellant is married to Cheryl Thomas ("Mrs. Thomas"). He is also the father of three daughters — Constance, Casey, and Courtney — and three sons — twins Fred H. Thomas IV and Fred H. Thomas V, and Fred H. Thomas VI. Prior to the events at issue in this case, Appellant was employed as a automobile mechanic.
At approximately 5:00 p.m. on September 1, 1997, Appellant drove to a Labor Day picnic at the his mother's home. Over the course of the day, Appellant ate a plate of food and drank between four and six beers. At approximately 10:45 p.m., Appellant left the picnic in his car, a 1984 Oldsmobile Delta 88. The passengers in the car were Mrs. Thomas, Appellant's six children, Deborah Spy (a friend), and Deborah's two sons, Deshawn and Kenneth. Appellant and Mrs. Thomas sat in the front, with Fred VI between them. The rest of the passengers sat in the back of the car, with some sitting on others' laps. No one in the back seat wore a seat belt.
To return home, Appellant drove south on Arlington Street in Akron, Ohio. At the point where Arlington Street intersects with Fifth Avenue, Arlington Street is a four-lane street; left-hand turns are made from the left lane. As Appellant approached the intersection of Arlington Street and Fifth Avenue in the left-hand lane, he suddenly realized that he could not stop his car in time to avoid rear-ending the car stopped ahead of him in the left-hand lane. Because there was a car in the right-hand lane and the rear brakes on his car were bad, Appellant attempted to go around the car ahead of him by going left of center. However, the car ahead began to turn left onto Fifth Avenue, and Appellant's car struck the turning car on the driver's side. The turning car was sent spinning across the intersection. Appellant's car slid sideways and smashed into a utility pole. Appellant's car came to rest a few feet away from the utility pole.
After the accident, Appellant and bystanders retrieved the children from Appellant's car. Police and emergency vehicles arrived quickly on the scene. The passengers in Appellant's car and the driver of the car that Appellant struck were all taken to area hospitals. All the passengers in Appellant's car received some form of injury, and many had broken bones. Fred IV and Kenneth Spy died from the injuries they sustained in the accident.
Officer Steven Null of the Akron Police Department was dispatched to Akron Children's Hospital to collect information from some of the crash victims who were at the hospital. While there, Officer Null was approached by Appellant, who identified himself as the driver of one of the vehicles involved in the crash. While speaking with Appellant, Officer Null noticed that he exuded an odor of alcohol, had glassy eyes, and exhibited slow speech and slowed motor skills. Officer Null completed his interviews at the hospital and began to return to police headquarters. He also notified headquarters of Appellant's status as the driver of one of the vehicles. Officer Null was told by Sergeant Glenn McHenry to return to the hospital and arrest Appellant, which Officer Null did.
Appellant was brought to police headquarters, where a breath alcohol test was administered by Officer Null and Officer Linda McCain. Approximately four hours had elapsed since the accident. The result of Appellant's breath test was 0.081, under the statutory limit of 0.10. The officers also asked Appellant to perform certain physical tests, and Appellant complied. Based on the outcome of the breath and physical tests, the officers advised Appellant of his Miranda rights and interviewed him. Appellant admitted that he had been driving the car that struck the turning car, that he had consumed four or five beers that day, that he was driving under a suspended license, and that the rear brakes on his car were bad. Appellant also recounted the events of the day to the officers. After the interview, Appellant was taken into custody.
Appellant was indicted by the Summit County Grand Jury on several counts, and the indictment was later supplemented. Appellant was eventually tried on two counts of aggravated vehicular homicide, two counts of involuntary manslaughter, seven counts of aggravated vehicular assault, five counts of endangering children, one count of driving under the influence of alcohol, one count of driving under suspension, one count of reckless operation, one count of failure to maintain an assured clear distance, and one count of operating an unsafe vehicle. All but the last three charges were tried to a jury in November 1997; the remaining three, all minor misdemeanors, were tried to the bench. Appellant was found guilty on all counts except one count of aggravated vehicular assault. The trial court sentenced Appellant accordingly on December 11, 1997. This appeal followed.
Appellant asserts four assignments of error. We will address each in turn.
 I.
In his first assignment of error, Appellant argues that the trial court erred by not granting his motion for acquittal under Crim.R. 29. Crim.R. 29(A) provides that a trial court "shall order the entry of a judgment of acquittal * * * if the evidence is insufficient to sustain a conviction of such offense or offenses." A trial court may not grant an acquittal by authority of Crim.R. 29(A) if the record demonstrates that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt. State v. Wolfe (1988), 51 Ohio App.3d 215,216. In making this determination, all evidence must be construed in a light most favorable to the prosecution. Id.
Appellant maintains that there was insufficient evidence to support the convictions for aggravated vehicular homicide, involuntary manslaughter, aggravated vehicular assault, endangering children, driving under the influence of alcohol, and driving under suspension. We will address each charge individually.[1]
 A. Aggravated Vehicular Homicide
Appellant was convicted of two counts of aggravated vehicular homicide, in connection with the deaths of Fred IV and Kenneth Spy. R.C. 2903.06(A) states in relevant part: "No person, while operating * * * a motor vehicle, * * * shall recklessly cause the death of another[.]"
 A person acts recklessly when, with heedless indifference to the consequences, he perversely disregards a known risk that his conduct is likely to cause a certain result or is likely to be of a certain nature. A person is reckless with respect to circumstances when, with heedless indifference to the consequences, he perversely disregards a known risk that such circumstances are likely to exist.
R.C. 2901.22(C). Recklessness may be shown through evidence of a defendant's operation of an "unroadworthy vehicle,"State v. Laub (1993), 86 Ohio App.3d 517, 521, or "[e]vidence that a defendant was driving under the influence of alcohol[,]"State v. Runnels (1989), 56 Ohio App.3d 120, 126.
We find that there was sufficient evidence to support Appellant's convictions for aggravated vehicular homicide. The evidence showed that Appellant, an automobile mechanic, drove a car that he knew had bad brakes, that Appellant was under the influence of alcohol at the time of the accident, and that he drove the car with an excessive number of people inside who did not or were not able to use seatbelts. The evidence also demonstrated that Appellant was driving at a rate of speed greater than the posted speed limit of thirty miles per hour. The evidence, viewed in a light most favorable to the prosecution, demonstrates that Appellant acted recklessly and that his recklessness caused the deaths of Fred IV and Kenneth Spy. Appellant's convictions for aggravated vehicular manslaughter are supported by sufficient evidence.
 B. Aggravated Vehicular Assault
Appellant was convicted of six counts of aggravated vehicular assault, for the injuries sustained by Mrs. Thomas, Constance, Courtney, Casey, Fred VI, and Deborah Spy. R.C.2903.08(A) states: "No person, while operating * * * a motor vehicle, * * * shall recklessly cause serious physical harm to another person[.]" Serious physical harm is defined, in part, as:
 (b) Any physical harm that carries a substantial risk of death;
 (c) Any physical harm that involves some permanent incapacity, whether partial or total, or that involves some temporary, substantial incapacity;
 (d) Any physical harm that involves some permanent disfigurement, or that involves some temporary, serious disfigurement; [or]
 (e) Any physical harm that involves acute pain of such duration as to result in substantial suffering, or that involves any degree of prolonged or intractable pain.
R.C. 2901.01(A)(5).
The record discloses the following: Constance suffered multiple abrasions to her feet, legs, and hands and a broken femur that required surgery and the placement of a metal plate and metal screws; after she was released from the hospital, she was required to use a wheelchair, crutches, or a walker to move about. Courtney sustained a maxillary sinus fracture and several facial lacerations, one of which was five inches long. Casey received contusions in both lungs, a concussion, a fractured rib, a fractured left clavicle, and a liver laceration. Fred VI received a mild concussion and a fractured upper left arm that required surgery. Mrs. Thomas sustained a fracture to her right ankle that required surgery and that was repaired with a metal plate and screws. Deborah Spy suffered maxillary and cranial fractures as well as intracerebral and lung contusions. Her spleen was injured to the extent that it had to be removed. She also required extensive rehabilitation after her initial hospitalization.
The evidence outlined above demonstrates that each of these people suffered serious physical harm. For most, the harm was the temporary but substantial incapacity of a bone fracture. For others, such as Deborah Spy, the harm suffered has been permanent and has caused substantial suffering. As noted above, Appellant's actions were reckless and caused the aforementioned injuries to Mrs. Thomas, Constance, Courtney, Casey, Fred VI, and Deborah Spy. There was sufficient evidence to support the aggravated vehicular assault convictions.
 C. Endangering Children
Appellant was convicted of five counts of endangering children, for the injuries sustained by Constance, Courtney, Casey, Fred V, and Fred VI. R.C. 2919.22(A) reads in relevant part: "No person, who is the parent * * * of a child under eighteen years of age * * * shall create a substantial risk to the health and safety of the child, by violating duty of care, protection, or support." The required culpable mental state to support the conviction is that of recklessness. State v. McGee
(1997), 79 Ohio St.3d 193, syllabus.
Viewing the evidence in a light most favorable to the prosecution, there is sufficient evidence to support the endangering children convictions. Appellant was reckless in his actions, and his conduct violated his duty of care and protection toward his children. Appellant's conduct caused a substantial risk to his children's health and safety. Therefore, the trial court did not err by overruling Appellant's motion for acquittal as to those counts.
 D. Driving Under the Influence of Alcohol
Appellant was convicted of one count of driving while under the influence of alcohol. R.C. 4511.19(A)(1) states that "[n]o person shall operate any vehicle * * * within this state, if * * * [t]he person is under the influence of alcohol[.]" A conviction is supported by sufficient evidence if there is "proof that [the defendant] had consumed some alcohol * * * in a quantity adversely and appreciably impairing his actions or mental processes and depriving him of that clearness of intellect and control of himself he would otherwise have had."State v. Bakst (1986), 30 Ohio App.3d 141, 145.
The record shows that Appellant admitted to consuming between four and six beers that day. Officer Null testified that when they spoke at the hospital, Appellant showed signs of impairment such as glassy eyes, slowed speech, and slowed movement.[2] There was also evidence of impairment in Appellant's inability to react quickly enough to the stopped vehicles at the intersection of Arlington Street and Fifth Avenue. Taken in a light favorable to the prosecution, there was sufficient evidence that Appellant operated a vehicle under the influence of alcohol.
 E. Driving Under Suspension
R.C. 4507.02(B)(1) states in pertinent part: "No person, whose driver's * * * license * * * has been suspended or revoked pursuant to Chapter 4509. of the Revised Code, shall operate any motor vehicle within this state[.]" Appellant argues that there was insufficient evidence to support his conviction for driving while under suspension. However, Appellant stipulated at trial that he was both operating the motor vehicle in question and that his license was suspended on September 1, 1997. Appellant cannot credibly argue that his conviction for driving while under suspension was not supported by sufficient evidence after making these stipulations. The trial court clearly did not err by overruling Appellant's motion for acquittal on this count.
 F. Involuntary Manslaughter
Appellant was also convicted of two counts of involuntary manslaughter, in connection with the deaths of Fred IV and Kenneth Spy. R.C. 2903.04(B) states: "No person shall cause the death of another * * * as a proximate result of the offender's committing or attempting to commit a misdemeanor of the first, second, third, or fourth degree or a minor misdemeanor."
In the case at bar, the jury found that the deaths of Fred IV and Kenneth Spy were the proximate cause of Appellant committing the offenses of driving under the influence of alcohol, in violation of R.C. 4511.19, and reckless operation of a vehicle, a violation of R.C. 4511.20. In Appellant's case, driving under the influence of alcohol is a first degree misdemeanor, R.C. 4511.99(A)(1), and reckless operation of a vehicle is a minor misdemeanor, R.C. 4511.99(D)(1)(a).
The evidence adduced in the case at bar, when viewed in a light most favorable to the prosecution, reveals that Appellant did commit the two underlying misdemeanor offenses. Appellant's sufficiency argument as to the driving under the influence charge was rejected above, and he does not contest his reckless operation conviction. Furthermore, those offenses were the proximate cause of the deaths of Fred IV and Kenneth Spy. There was sufficient evidence to support the involuntary manslaughter convictions.
 G. Summary
Each of Appellant's convictions are supported by sufficient evidence. Therefore, the trial court did not err by overruling Appellant's motion for acquittal on these counts. Appellant's first assignment of error is overruled.
 II.
In his second assignment of error, Appellant argues that his conviction for gross sexual imposition was against the manifest weight of the evidence. However, Appellant was not convicted of this crime. Therefore, we overrule his second assignment of error.
 III.
In his third assignment of error, Appellant argues that he was deprived of a fair trial by virtue of a discovery violation by the prosecution. In the course of conducting breath alcohol tests, the Akron Police Department ordinarily videotapes the test and the officers' interview with the person being tested. When the breath alcohol test was performed on Appellant, Officers Null and McCain thought that the videotape machine was recording the test. However, it became known later that the videotape machine had malfunctioned that night, and no videotape was available as a result. In his Crim.R. 16 discovery demand, Appellant asked to be permitted to inspect and copy any recorded statement made by Appellant and requested that the prosecution "disclose whether or not any of the recordings mentioned * * * above have been erased, destroyed, or altered, either intentionally or inadvertently." No videotape was produced, and no notice of erasure, destruction, or alteration was given. When Officer Null testified at Appellant's trial, he stated that the videotape machine had not functioned and that as a result there was no videotape of Appellant's test and interview. Appellant objected, contending that he was never told of the absence of the videotape and that the videotape would have been used in his defense. The trial court overruled the objection. Appellant now argues that he was prejudiced by the prosecution's failure to disclose the absence of the videotape.
Crim.R. 16 governs discovery in criminal proceedings. Under Crim.R. 16(B)(1)(a), upon motion of a defendant, the prosecuting attorney must
 permit the defendant to inspect and copy or photograph any of the following which are available to, or within the possession, custody, or control of the state, the existence of which is known or by the exercise of due diligence may become known to the prosecuting attorney.
 (i) Relevant written or recorded statements made by the defendant * * *, or copies thereof; [and]
 (ii) Written summaries of any oral statement, or copies thereof, made by the defendant to a prosecuting attorney or any law enforcement officer[.]
If a party fails to comply with the discovery motion, "the court may order such party to permit the discovery or inspection, grant a continuance, or prohibit the party from introducing in evidence the material not disclosed, or it may make such other order as it deems just under the circumstances." Crim.R. 16(E)(3).
We need not decide if a sanction should have been imposed because there was no discovery violation by the prosecution. Appellant's discovery demand requested all recorded statements and requested disclosure of whether any such recordings were "erased, destroyed, or altered" by the prosecution.[3] In the case at bar, no recording was made, and therefore no disclosure was required. Likewise, there was no erasure, destruction, or alteration of a recorded statement that should have been disclosed. While a prosecuting attorney may be required to disclose a recording that exists or the destruction of a recording that once existed, the sweep of Crim.R. 16 does not require the prosecution to disclose the nonexistence of a recording. Therefore, the trial court did not err by overruling Appellant's objection. Appellant's third assignment of error is overruled.
 IV.
In his fourth assignment of error, Appellant argues that certain testimony regarding what Appellant's breath alcohol level would have been at the time of the accident was improperly admitted. One of the witnesses for the prosecution was Dr. Marvin S. Platt, the medical examiner for Summit County. Dr. Platt was asked a hypothetical question regarding Appellant's alcohol consumption and the rate of decrease in alcohol level over time:
 We have an adult male who consumes anywhere between four to six beers. He takes a breath test that measures blood [sic] alcohol content, and the blood [sic] alcohol concentration is found to be .08, and this is — the breath test is administered approximately four hours after a collision.
 Do you have an opinion based upon a reasonable degree of scientific certainty as to the adult male's blood [sic] alcohol content?
Over Appellant's objection, Dr. Platt opined that the alcohol level four hours earlier would have been between 0.125 and 0.150. Appellant now contends that Dr. Platt's opinion should not have been admitted into evidence.
"A trial court enjoys broad discretion in the admission and exclusion of evidence and will not be reversed absent a clear abuse of discretion which materially prejudiced the objecting party." State v. Schlegel (Feb. 4, 1998), Summit App. No. 18419, unreported, at 8. An abuse of discretion is more than an error of judgment, but instead demonstrates "perversity of will, passion, prejudice, partiality, or moral delinquency."Pons v. Ohio State Med. Bd. (1993), 66 Ohio St.3d 619, 621. When applying the abuse of discretion standard, we may not freely substitute our judgment for that of the trial court.Evicks v. Evicks (1992), 79 Ohio App.3d 657, 664-65.
Appellant does not contend that Dr. Platt was not an expert and could not give an opinion as such. Rather, Appellant argues that Dr. Platt's opinion was based on insufficient information because Dr. Platt did not test any of Appellant's specimens. We disagree. Evid.R. 703 states: "The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by him or admitted into evidence at the hearing." In the case at bar, Dr. Platt was presented with a hypothetical question based on evidence previously admitted during the trial, and his response to that hypothetical question was based on a reasonable degree of scientific certainty. The trial court did not abuse its discretion by admitting Dr. Platt's opinion into evidence. Accordingly, Appellant's fourth assignment of error is overruled.
Appellant's assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the County of Summit, Court of Common Pleas, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to appellant.
Exceptions.
 _____________________ EDWARD J. MAHONEY FOR THE COURT
SLABY, P. J., CACIOPPO, J., CONCUR.
(Mahoney, J., retired Judge of the Ninth District Court of Appeals, sitting by assignment pursuant to Section 6(C), Article IV, Constitution.)
(Cacioppo, J., retired Judge of the Ninth District Court of Appeals, sitting by assignment pursuant to Section 6(C), Article IV, Constitution.)
[1] At trial, Appellant stipulated that he was operating a motor vehicle within the meanings of the various statutes at issue. Therefore, we will not address that portion of any offenses with an essential element of motor vehicle operation.
[2] The testimony also showed that Appellant produced a breath alcohol content test of 0.081 four hours after the accident, and that Appellant's blood alcohol content would have been above 0.10 at the time of the accident. There was also testimony that Appellant's judgment and ability to judge space and time would be adversely affected at an alcohol level of 0.08.
[3] Appellant does not complain that the prosecution did not provide any other discoverable material, such as summaries of the statements made by Appellant during the breath alcohol test and interview conducted by Officers Null and McCain. Our review is strictly limited to the issue of the videotape of the breath alcohol test and interview.