OPINION
Betty and Leo Scott were married on August 15, 1989, and have one child, Daniel Lee, born on June 9, 1982. At the time of the parties' marriage, Mr. Scott, Appellant-Defendant herein, owned certain real property located at 3590 Harding Highway. Mr. Scott purchased the real property in 1983, approximately six years before the marriage.
At the time of the marriage, the real property was subject to a first mortgage, the balance of which is in dispute. In 1992, the real property in issue was substantially damaged by fire. Insurance proceeds totaling $90,000 received as a result of the fire were used to pay all or a portion of the remaining first mortgage, with the balance of the insurance proceeds being used to rebuild the home. The insurance proceeds were apparently insufficient to complete reconstruction of the home; therefore, the parties secured a "new" first mortgage on the real property totaling $70,000. Thereafter, the parties also acquired a home equity loan in the amount of $45,000, with approximately $42,000 being used. The "new" first mortgage and equity loan were then consolidated into a mortgage totaling approximately $112,000. Finally, the parties secured another home equity loan in the amount of $23,000. Consequently, as of the time of the divorce proceedings, the real property was encumbered for approximately $135,000 ($112,000 mortgage + $23,000 equity loan).
At the time of the divorce proceedings, the home was appraised at approximately $145,000. The trial court determined that the home was marital property and awarded it to Appellant. Appellant was therefore awarded the real property subject to loans and encumbrances totaling approximately $135,000. Because the property was appraised at $145,000, the trial court determined that $10,000 in equity existed and Appellant was required to account for receiving this equity.
Appellant also had an interest in a retirement plan with Central States Southwest and Southwest Areas Pension Fund. The fund was presently valued at $51,645.94. The trial court determined that the retirement fund was a marital asset and awarded Mrs. Scott, Plaintiff-Appellee herein, the sum of $25,385.00 plus certain earnings therefrom. The trial court indicated in its Judgment Entry that it would issue a Qualified Domestic Relations Order to effectuate the award. It appears from the language of the Journal Entry that the trial court intended for Appellant to immediately satisfy the award.
It is from the equitable distribution of the marital property that Appellant now appeals, prosecuting three assignments of error.
Before reaching the merits of Appellant's assignments of error, we must first address a threshold jurisdictional issue. Ohio law provides that the courts of appeals in this state have jurisdiction to review the final orders or judgments of inferior courts within their district. Section 3(b)(2), Article IV of the Ohio Constitution; R.C. § 2501.02. A "final order" is one, which, inter alia, affects a substantial right, and either determines the action or is made in a special proceeding. R.C. § 2505.02. The operative effect of such an order is that it determines the entire case, or a distinct branch thereof, such that it will not be necessary to bring the cause before the court for further proceedings. Noble v. Colwell (1989), 44 Ohio St.3d 92, 94;Lantsberry v. Tilley Lamp Co. (1971), 27 Ohio St.2d 303, 306;Teaff v. Hewitt (1853), 1 Ohio St. 511, 520. Application of these principles to the cause sub judice raises concern with respect to the apparent failure of the trial court to issue and ultimately journalize the QDRO.
Divorce is a "special statutory proceeding" and, therefore, all ancillary issues related thereto must be analyzed as a special proceeding under R.C. § 2505.02. See, State ex rel. Papp v. James
(1994), 69 Ohio St.3d 373. In that the division of marital property, including pension benefits, is clearly an ancillary issue in a divorce proceeding, the judgment of the trial court must be considered final and appealable so long as it can be said to affect a "substantial right."
A review of the case law reveals the general consensus that a judgment apportioning pension benefits between ex-spouses is not a final and appealable order until such time as the QDRO is entered. See, e.g., Lyddy v. Lyddy (1989), 64 Ohio App.3d 561, 562;Middendorf v. Middendorf (1994), Shelby App. No. 17-93-17, unreported; Procuniar v. Procuniar (1995), Greene App. No. 95-CA-19, unreported; Stackhouse v. Stackhouse (1996), Montgomery App. No. 15710, unreported. The rationals underlying this line of cases is that a "substantial right" has not been affected. In other words, until a QDRO is issued, there is no actual order to the pension plan administrator directing it to divide the benefits in a certain manner and, therefore, the spouses are unable to determine, with certainty, exactly how their respective rights will be affected. The bottom line is that there is more to be done in the trial court, that being the issuance of a QDRO made in compliance with federal law. Consequently, until the QDRO is issued, the judgment of the trial court cannot be considered final and appealable because it cannot be said to yet affect a substantial right.
We recognize that at least one court has disagreed with this line of reasoning. See, Wright v. Wright (1994), Hocking App. No. 94CA02, unreported. In Wright, the Fourth Appellate District concluded that "an individual's ownership interest in certain marital property upon divorce constitutes a `substantial right.' Th[e] court, accordingly, rule[d] that the judgment entered below [was] final and appealable (even in the absence of a QDRO) and [the court had] jurisdiction to review the matter on its merits."Id. We disagree with the conclusion reached by the Fourth District and think that the better reasoned cases are those holding that a judgment entry is not a final and appealable order until the trial court issues a QDRO.
We pause to note that until the QDRO is entered, the trial judge can change his mind about its contents and that of the judgment ordering it. Additionally, as conceded by Appellant's counsel at oral argument, until a QDRO is entered and issued to the plan administrator, there can be no certainty that the plan division will be rejected. In our view, these considerations strengthen our conclusion that until a QDRO is issued the judgment entry is not a final and appealable order.
As a result of the trial court's failure in the case subjudice to issue a QDRO, we are without jurisdiction to hear this appeal, and the lack thereof is a basis for mandatory sua sponte
dismissal. See, e.g., Evicks v. Evicks (1992), 79 Ohio App.3d 657,660-661. The appeal is hereby dismissed, and the cause remanded to the trial court for determination and disposition of the issues outstanding in this case.
Appeal dismissed and cause remanded.
 HADLEY, P.J., and SHAW, J., concur.