Appellant John Tutt appeals from the order of the trial court vacating its previous decision and appointing an independent guardian of the person and estate of Genobia L. Tutt (ward). John Tutt raises five assignments of error ranging from procedural irregularities to who the appropriate guardian should be. For the reasons adduced below, we affirm the trial court's decision.
In March of 1999, the ward's husband passed away. The ward and her husband owned three homes together. All the homes were located on Gooding Avenue. The ward had resided with her husband in one of the homes together with their son, appellee James Tutt, and his girlfriend. John Tutt resided in another of these homes as did his half sister, appellee Helena Smith. Helena Smith was born of a different father.
There is a factual dispute among the parties as to the type of relationship the children had with the ward. John Tutt maintains that he lived in one of the Gooding homes rent free because he had always been attentive to his parents and they wanted him close by. Conversely, John Tutt claims that James Tutt was required by his parents to pay rent and was a source of problem to them due to his involvement in drugs. After the death of his father, John moved his mother into his home claiming he feared for her safety and that his brother James Tutt stopped paying rent and misused his mother's assets. John Tutt then instituted eviction proceedings claiming that James Tutt denied him access to the home despite the fact that John Tutt had power of attorney from their mother.
Helena Smith, who also lived rent free in one of the Gooding homes located across the street from the ward, claims that John Tutt was not intimately involved in the care of his parents. She states that she was responsible for obtaining necessary medical assistance and care for her mother's medical needs due to Alzheimer's disease. Further, she claims to have visited her mother regularly and to have taken her on overnight stays and trips.
Following the death of the ward's husband, John Tutt filed an application seeking appointment as guardian of the ward's person and estate. Helena Smith only filed an application for guardian of the person. The magistrate bifurcated the hearing as to guardianship of the person and estate. The guardianship of the person was to be heard almost a month after the guardian of the estate hearing. At the initial probate hearing for guardianship of the estate, John Tutt presented testimony and evidence of $20,000 being wrongfully withdrawn from the ward's bank account along with forged pension checks and other testimony regarding the parties' relationship with one another and the ward. The magistrate appointed John Tutt as guardian of the estate in a written decision complete with findings of fact. Helena Smith was not represented by counsel at the time nor did she object to this appointment. James Tutt was represented by counsel at the hearing, but did not testify, present witnesses, or cross-examine John Tutt.
Within fourteen days of the magistrate's decision, James Tutt filed his assignment of error and motion to vacate seeking an order vacating the appointment of John Tutt and setting forth objections to the magistrate's decision, findings and recommendations. John Tutt's brief in opposition argued that the motion in question should be treated as a Civ.R. 60(B) motion. The probate court treated this pleading as objections pursuant to Civ.R. 53(E)(3).
The trial court consolidated all matters and held a hearing on September 1, 1999. The issues before the court were the two applications for guardian of the person of the ward and James Tutt's motion to vacate and objections regarding John Tutt's appointment as guardian of the estate. At the hearing, counsel for John Tutt, Helena Smith, and James Tutt all had an opportunity to present their legal arguments on all the issues before the court. Counsel for John Tutt continued to argue that James Tutt's motion should be treated as a 60(B) motion. After hearing arguments of counsel, the court granted the motion to vacate, denied the two applications for appointment of guardianship of the person, and ordered the appointment of an independent third-party guardian for both the estate and person of the ward. This appeal now follows.
The first and second assignments of error allege procedural irregularities in the manner in which the probate court handled the appointment of the guardian and the subsequent motion to vacate/objections. The first two assignments of error state:
 I. THE TRIAL COURT ERRED BY FAILING TO STATE WHETHER THE MOTION OF JAMES TUTT WOULD BE TREATED AS OBJECTIONS UNDER OHIO CIVIL RULE 53 OR AS A MOTION TO SET ASIDE A JUDGMENT UNDER OHIO CIVIL RULE 60(B).
 II. THE TRIAL COURT ERRED BY GRANTING JAMES TUTT'S OBJECTIONS AND/OR MOTION TO SET ASIDE JUDGMENT AND REMOVING JOHN W. TUTT AS GUARDIAN OF THE ESTATE OF GENOBIA L. TUTT.
John Tutt contends that the probate court erred in granting the motion of James Tutt, entitled assignment of error and motion to vacate,[1] without first informing the parties if said motion was being considered as objections under Civ.R. 53(E)(3) or a Civ.R. 60(B) motion to vacate. John Tutt filed a brief in opposition to this motion arguing that it should be evaluated as a Rule 60(B) motion to vacate since the magistrate had not issued a report, there was no transcript of the hearing, there was no evidentiary documentation supporting the motion and John Tutt had already been appointed guardian of the estate by the magistrate. John Tutt's brief in opposition contradicts his statement of the facts in his appellate brief wherein he states the magistrate issued a written decision, including finding of facts, the same day of the hearing. The record is clear that the magistrate did, in fact, issue such a report pursuant to Civ.R. 53(E).
Further, the record is clear that James Tutt's attorney filed the motion at issue within the time allowed for filing objections pursuant to Civ.R. 53(E)(3)(a); i.e., 14 days. The probate court then conducted its own hearing on all the issues aforementioned. After the hearing, the court issued a statement of proceedings stating that it was treating James Tutt's motion as objections under Rule 53. The statement also set forth that it reviewed the case file, briefs and arguments of counsel and concluded that the best interest of the ward would be served by the appointment of an independent guardian.
Regardless of the caption or title of James Tutt's motion, this court agrees with the probate court that said motion should be considered as objections under Rule 53. More importantly, the objections stated in the motion met the minimum standards set forth in Civ.R. 53(E)(2) and expounded upon in Kilgore v. Kilgore (1982),5 Ohio App.3d 137. The trial court did not error in hearing this motion as Rule 53 objections since James Tutt's motion set forth, with adequate particularity, the specific grounds for his objections. In particular, the motion references the financial irregularities regarding the ward's assets, the next-of-kin not being given an opportunity to participate at the initial hearing, and the motion takes exception to the magistrate's determination that John Tutt is a disinterested person to serve as guardian.
Further, James Tutt's failure to submit a transcript or affidavit with his motion, as set forth in Civ.R. 53(E)(3)(b), does not cause it to fail on its face, but merely limits the trial court's review. Roberts v. Payton (1995), 105 Ohio App.3d 597. The appellate court specifically held: When an objecting party fails to submit to the trial court the necessary affidavit or transcript of the referee's hearing, the scope of a trial court's review of the factual findings in a report is limited to determining whether those findings are sufficient to support the referee's ultimate factual findings and the conclusions of law. Id. at 600, citing, Welsch v. Mariano (Nov. 10, 1994), Trumbull App. No. 94-T-5062, unreported, at 4.
John Tutt's contention that he was prejudiced by the probate court's failure to evaluate the motion as a Rule 60(B) motion is illogical at best. He fails to demonstrate how this could have possibly prejudiced his rights. In fact, the standard to comply with Civ.R. 60(B) motions is much less cumbersome and stringent than that required by Civ.R. 53. Accordingly, this court's review of such would be much less intensive and more deference would be given to the movant of a Rule 60(B) motion.
Decisions regarding the appointment of guardians shall not be reversed absent an abuse of discretion. In re Estate ofBednarczuk, 80 Ohio App.3d 548. It is axiomatic that an abuse of discretion is more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable. Id. at 551; State v. Adams, 62 Ohio St.2d 151,157.
The probate court's decision to hear the motion as Rule 53 objections was within its discretion and was not done arbitrarily or unconscionably. Error, if any, was harmless. Accordingly, the first assignment of error is overruled.
The next three assignments of error deal with the probate court's decision to remove John Tutt as guardian and replace him with an independent third-party guardian. Having a common basis in law and fact, the remaining assignments of error will be considered jointly. The assignments of error, three through five, are stated as follows:
 III. THE TRIAL COURT ERRED BY GRANTING JAMES TUTT'S OBJECTIONS AND/OR MOTION TO SET ASIDE JUDGMENT, AND REMOVING JOHN W. TUTT AS GUARDIAN OF THE ESTATE OF GENOBIA L. TUTT WITHOUT AN EVIDENTIARY HEARING.
 IV. THE TRIAL COURT ERRED BY NOT APPOINTING JOHN W. TUTT AS GUARDIAN OF THE PERSON OF GENOBIA L. TUTT UNDER THE PROVISIONS OF O.R.C. 2111.06.
 V. THE TRIAL COURT ERRED BY DENYING THE APPLICATIONS OF JOHN W. TUTT AND HELENA SMITH TO BE GUARDIAN OF THE PERSON OF GENOBIA L. TUTT AND DETERMINING THAT IT IS IN THE BEST INTEREST OF GENOBIA L. TUTT TO HAVE AN INDEPENDENT GUARDIAN OF THE PERSON WITHOUT AN EVIDENTIARY HEARING.
Initially, we note that the trial court has broad discretion regarding the appointment of guardians and utilizes the best interest of the ward standard to make its determination. The paramount concern is the welfare of the ward and absent an abuse of discretion the probate court's decision will not be disturbed. R.C.2111.02; Re: Wilson's Guardianship, 23 Ohio App. 390; Re:Guardianship of Harris, 73 Ohio Law Abs. 97.
John Tutt's main contention is that the trial court abused its discretion by failing to hold an evidentiary hearing in making its decision to replace him as guardian of the estate and in denying the applications of Helena Smith and himself to be guardian of the person. John Tutt does not offer any case law to further this position.
Irrespective of the civil rule the probate court considered the motion to be governed by in making its determination; i.e., Civ.R. 60(B) or 53, the court was not required to hold an evidentiary hearing. Under Civ.R. 60(B), a trial court may summarily deny the motion when the movant fails to submit evidentiary material to justify relief from judgment and it is within its sound discretion whether to hold an evidentiary hearing on such motion. Bates Springer, Inc. v. Stallworth, 56 Ohio App.2d 223
. Absent necessary operative facts, an evidentiary hearing is not required and is discretionary with the trial court.Salem v. Salem, 61 Ohio App.3d 243.
As applicable in this case, the trial court also has discretion whether to hold an evidentiary hearing after a party submits objections pursuant to Civ.R. 53(E)(2). Evicks v. Evicks,79 Ohio App.3d 657. The standard by which the trial court decides to adopt, reject or modify the report of a referee is not the same as that which governs the review by an appellate court of a trial court's decisions of law. DeSantis v. Soller, 70 Ohio App.3d 226,232. Under a Rule 53 review, the trial court must make its own de novo determination by undertaking an independent analysis of the issues.
The court of appeals analyzed this issue as follows:
 The trial court, when considering a referee's report, may have little, if any, greater advantage in determining the credibility of the witnesses than this court would upon review of the trial court's decision. The trial court, like a reviewing court, is limited to reviewing witnesses' testimony in the form of a written transcript, and lacks the advantage of physically viewing the witnesses in order to aid in determining truthfulness. However, the standard by which a trial court decides whether to adopt, reject or modify the report of a referee is not the same as that which governs the review by an appellate court of the trial court's decision upon questions of law. The Civil Rules clearly provide that the trial court must make its own factual determination by undertaking an independent analysis of the issues. The trial court is bound to enter its own judgment. This is a similar function to that which this court performed upon former appeals upon questions of law and fact prior to the adoption of App.R. 2. The trial court should not adopt challenged referee's findings of fact unless the trial court fully agrees with them — that is, the trial court, in weighing the evidence itself and fully substituting its judgment for that of the referee, independently reaches the same factual conclusions. Id. at 233.
Applying the foregoing to John Tutt's assignments of error clearly demonstrates that they are without merit. While neither party requested a transcript, the magistrate did issue written findings of fact. The probate court then held a new hearing based on James Tutt's motion. The court based its decision on a review of the magistrate's report, the pleadings and arguments of counsel. The probate judge did not make new or additional findings of fact in reaching its decision. Nor did the judge reject, modify or remand any of the magistrate's previous factual findings. WhileDeSantis clearly grants the trial judge the authority to do such at a new hearing, this is not the case here. The probate judge reached a different conclusion than the magistrate based on the same facts. Decisions concerning the best interest of the ward are clearly within the court's discretion. Neither the facts of this case nor the governing law warrants an evidentiary hearing.
Likewise, John Tutt's argument that R.C. 2111.06 requires the trial court to appoint the same individual as guardian of the person and estate of a prospective ward is without merit for the same reasons enunciated above. R.C. 2111.06 provides in relevant part: If the powers of the person appointed as guardian of a minor or incompetent are not limited by the order of appointment, such person shall be guardian both of the person and estate of the ward. In every instance the court shall appoint the same person as guardian of the person and estate of any such ward, unless in theopinion of the court the interests of the ward will be promoted bythe appointment of different persons as guardians of the person and of the estate. Id. (Emphasis added.)
The plain and unambiguous language of the statute grants the trial court broad discretion in appointing guardian of the person. This statute is inapplicable here because the probate court determined that John Tutt's original appointment as guardian of the estate was improper and nullified such. Accordingly, the probate court was not required to give deference to John Tutt under the provisions of R.C. 2111.06 when determining who to appoint guardian of the person.
The final argument of John Tutt that the trial court erred in denying his and Helena Smith's applications for guardianship by determining an independent guardian was in the ward's best interest is also without merit. There is no need for this court to reiterate the standard of review relating to the best interest of the ward. Nor shall we discuss the merits of an evidentiary hearing which is again raised in this final assignment of error.
In addressing this argument, it is sufficient to note that the record is replete with evidence demonstrating conflict among family members since the death of the ward's husband. There is conflicting evidence among all the parties involved as to which child was actually caring for the ward before these proceedings were initiated. John Tutt has taken legal proceedings to evict his brother James Tutt from the home of the ward. More importantly, all parties have cited to financial irregularities regarding the ward's assets. Accordingly, there was sufficient evidence before the probate court to determine that none of the family members should serve as guardian of the person or estate due to the discord among the siblings.
Finally, we note that a judgment will not be reversed upon insufficient or conflicting evidence if it is supported by competent credible evidence which goes to all the essential elements of the case. Cohen v. Lamko (1984), 10 Ohio St.3d 167.
Where there is substantial evidence upon which the trier of fact has based its decision, a reviewing court abuses its discretion in substituting its judgment as to the weight and sufficiency of the evidence. State v. Nicely (1988), 39 Ohio St.3d 147.
The decision of the probate court was not against the manifest weight of the evidence considering the general dynamics of the family members petitioning the court. The decision to appoint an independent guardian was based on sufficient information before the court and well within its discretion. The final three assignments of error are overruled.
All assignments of error having been considered and ruled upon, the judgment of the trial court is affirmed.
It is ordered that appellees recover of appellant their costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court Probate — Court Division to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
TIMOTHY E. McMONAGLE, P.J., and JAMES M. PORTER, J., CONCUR.
 __________________________ MICHAEL J. CORRIGAN, JUDGE
[1] The word Objections was handwritten in ink on the face of the original pleading filed by James Tutt with the probate court.