OPINION AND JUDGMENT ENTRY
This is an appeal from the judgment of the Ottawa County Court of Common Pleas which, following a trial to the bench, found appellant, Douglas P. DeVos, guilty of two counts of burglary. For the reasons that follow, we affirm the decision of the trial court.
On appeal, appellant raises the following assignments of error:
"First Assignment of Error:
 "THE TRIAL COURT ERRED AND DENIED APPELLANT EFFECTIVE ASSISTANCE OF COUNSEL WHEN IT
 DENIED HIS MOTION FOR ACCESS TO THE HOME OF MR. AND MRS. MICHAEL DOSKI IN ORDER TO EXAMINE THE PREMISES WHERE THE EVENTS ALLEGED IN COUNTS 6 AND 7 OF THE INDICTMENT OCCURRED.
"Second Assignment of Error:
 "APPELLANT'S BURGLARY CONVICTIONS WERE SUPPORTED BY INSUFFICIENT EVIDENCE AND WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE WHERE THE STATE WAS UNABLE TO DEMONSTRATE THAT ANY PERSON OTHER THAN APPELLANT WAS OR WAS LIKELY TO BE PRESENT AT THE TIME THE TRESPASS OCCURRED."
 STATEMENT OF THE CASE
On June 26, 1997, appellant was indicted on seven counts: theft, receiving stolen property, two counts of forgery, misrepresentation, and two counts of burglary. On February 24, 1998, a bench trial commenced. At the conclusion of the state's case, the court granted appellant's Crim.R. 29 motion for judgment of acquittal as to count one, theft; count two, receiving stolen property; and counts three and four, forgery. The trial court found appellant guilty of count six, burglary, in violation of R.C. 2911.12(A)(2), a felony of the second degree, and count seven, burglary, in violation of R.C. 2911.12(A)(4), a felony of the fourth degree. Appellant entered a plea of no contest and was found guilty as to count five of the indictment, misrepresenting himself as a paramedic, in violation of R.C. 4765.50(A), a minor misdemeanor. On March 28, 1998, the trial court entered a judgment sentencing appellant to a two year term of incarceration, on count six only.
 STATEMENT OF FACTS
The burglary convictions arise out of an incident occurring on March 7, 1997, wherein appellant was found in the home of Vicki and Michael Doski. The relevant testimony was as follows.
Vicki Doski testified that appellant was the pastor of the church to which she belonged. She was the Sunday School teacher and had attended the church since childhood. Appellant had been the pastor there since 1989 or 1990. Mrs. Doski testified that appellant had never been in her home. Mrs. Doski also testified that on March 7, 1997, she left her home for work at approximately 7:30 or 7:40 a.m. When she left for work, all the beds were made and closet doors and dresser drawers where shut. She further testified that on March 5, 1997, her daughter had completed a cookbook with her Girl Scouts troop, which held its meetings in the church.
Michael Doski testified that he worked second shift, but would help his father-in-law with his farming duties whenever he needed it. On March 7, 1997, Mr. Doski left his home at approximately 8:30 or 8:40 a.m. to help his father-in-law. Mr. Doski testified that when he left his home, the beds were made, the dresser drawers were closed, and the house was neat, as he had just done the dishes, ran the vacuum, and swept the floors. All the doors to the house were closed, but not locked.
Mr. Doski testified that he returned home at approximately 11:00 or 11:05 a.m. because he needed to meet his son's kindergarten bus which arrived at 11:10 a.m. As he approached his home, he saw a van in his driveway. Mr. Doski backed his truck into his driveway, to be in a position to unload firewood, and exited his vehicle. Upon doing so, Mr. Doski noticed that the van was running. He did not see anyone, so Mr. Doski returned to his truck and opened the overhead garage door with the remote opener. Mr. Doski testified that when the door opened, he noticed that the back door to his family room was open. The door leading from the family room to the attached garage was comprised of an interior steel door and a storm door. Mr. Doski testified that he entered his home. As he was entering the kitchen from the family room, Mr. Doski testified that he first saw appellant in the Doskis' master bedroom, looking into a dresser drawer. Mr. Doski further testified that he observed appellant for approximately thirty to forty-five seconds before yelling out, "What in the hell are you doing in my home?" At that point, according to Mr. Doski, appellant turned to his right, attempted to shut the drawer with his elbow, and "shot out of the bedroom real fast." Mr. Doski stated that appellant came into the kitchen, and that "his face was beet red, real red, and his eyes were bulging out." When Mr. Doski again asked, "What are you doing in my home," appellant responded, "Someone is in your home." Thereafter, Mr. Doski and appellant exited the house through the garage. Mr. Doski testified that appellant told him that "he had done me a favor by dropping off my daughter's cookbook from Girl Scouts." Doski stated that as they walked out into the garage, the cookbook was laying on the freezer in the garage. According to Doski, appellant entered his van and drove of quickly, speeding down the road and spinning his tires.
Additionally, Mr. Doski testified that no other person was found by him in his home, or by the police who came shortly thereafter, and there was no other car in the driveway besides appellant's and Doski's. Mr. Doski also testified that, in addition to his dresser drawer, which he observed appellant looking into, one of Mrs. Doski's dresser drawers was also open.
Mr. Doski further testified that he normally would have been home at the time he discovered appellant in his home, but for him being at his father-in-laws that morning. He stated that the community knows his schedule and that he would come and go from his residence during that time of day, so it would not have been strange to find him there at that time of day.
Appellant testified in his own behalf. According to appellant, he had prepared the church bulletin in the morning. While in the church, appellant found the cookbook made by the Doskis' daughter. Because appellant had to take a bulletin to the church organist, who lived next door to the Doskis', appellant took the cookbook with him. Appellant testified that he left the church at approximately 11:00 a.m. to go to the organist's home. Appellant stated that he arrived at the Doski home first.
As he approached the Doskis' home, appellant observed a person standing at the end of the Doskis' driveway. Appellant testified that his impression was that it may have been Mrs. Doskis' mother, but did not get a good look. Appellant then testified that he pulled up to the front of the garage, exited his van and left it running, "because my intention was to leave the cookbook," and went to the side door of the garage. Appellant stated that the service door to the garage, i.e., not the overhead door, was standing open. Appellant then stated that he rang the door bell and hollered into the garage because he thought there was someone in the home, possibly Mrs. Kihlken. Getting no response, appellant entered the garage and left the cookbook on the freezer. Once in the garage, he testified that he discovered the door leading into the home was also standing open. According to appellant, he knocked hard on the storm door, opened it, and hollered inside, but got no response. Thinking that the person he had seen could have been Mrs. Doski's mother, he thought that "perhaps she had gone in and become ill or collapsed." Hence, appellant testified that the reason he entered the home was "either for her or perhaps there was someone in the home," because, "[o]bviously, the doors were open." Also, because it was March, appellant found it to be unusual that a door would be open.
Appellant testified that he entered the home and walked through the family room and ended up in the front bedroom in order to look out the window "to see if someone [was] outside the house." Appellant then testified that as he was coming out of the bedroom, he heard Mr. Doski's voice. Appellant immediately exited the house. Appellant stated that his first face-to-face encounter with Mr. Doski occurred outside in the driveway where Mr. Doski was sitting in the back of his pickup truck, removing his boots. Appellant testified that he then left, went to the organist's home next door, dropped off the church bulletin, went to the Office Max in Sandusky, and returned home. Appellant testified that, on his way home, he saw Chief Pitzer's car in the Doskis' driveway. Appellant had lunch with his wife, discussed the matter, and went to the police station to speak with Chief Pitzer. Appellant further testified that he had no intention when entering the Doskis' home to take anything or commit any crime therein.
On cross-examination, appellant testified that at no time did he contact the police concerning the person he allegedly thought was in the Doskis' residence. He further testified that he was somewhat familiar with the Doskis' schedules, and stated:
 "I know that Mike works at Dixon-Ticonderoga. I know that Vicki works days at the bank, and I know Mike helps out his father-in-law, but he is there at various times during the day."
With respect to the dresser drawers, appellant testified that they were both open when he got there.
On rebuttal, Mr. Doski reiterated that he first confronted appellant in the Doskis' kitchen. Mr. Doski also testified that, at no point, did he go outside and sit on the tailgate of his vehicle to remove his boots.
At the conclusion of the testimony, the trial court rendered its decision from the bench. The trial court found that the evidence was "inconsistent and divergent, depending on the source of the particular evidence," and noted that the inconsistent evidence had "a direct bearing on the question of the Defendant's guilt and possible reasonable doubt." The trial court focused on the inconsistent testimony concerning whether Mr. Doski removed his boots, where appellant was first encountered by Mr. Doski, and whether appellant squealed his tires as he left. The trial court also considered the fact that appellant testified he had a glancing view of someone outside the house, but that no one was ever found in the house. The trial court further noted the difference between appellant's testimony that the doors and dresser drawers were open, and Mr. Doski's testimony that they were closed. Additionally, the court focused on appellant's testimony that he thought there was an emergency situation, and that his adrenalin was up, but never acted on that indication for two or two and one-half hours after leaving the house. The trial court found appellant's testimony to be "highly implausible."
The trial court found each element of burglary was proven beyond a reasonable doubt, but gave additional consideration to whether the state had proven that the Doskis or any other persons were actually present in the home, or likely to be present, at the time of the entry. The trial court then stated:
 "It does not make any difference whether the Doskis or any other persons were actually present in the home or not, nor does it make any difference whether cars were present in the driveway. You are reminded that both parties, Mr. Devos and Mr. Doski, testified that the garage door was closed.
 "There could have been a car in the garage. Mr. Devos would not have known that at the time he arrived at the premises and entered the house."
Thereafter, the trial court found appellant guilty of both counts of burglary as contained in the indictment, and entered judgment on March 4, 1998.
 FIRST ASSIGNMENT OF ERROR
In his first assignment of error, appellant argues that the trial court denied appellant the effective assistance of counsel when it denied appellant's motion to have access to the Doskis' residence. Appellant filed a motion, on October 30, 1997, requesting the court to authorize appellant, his counsel, and an investigator access to the Doskis' home "for the purpose of investigating the residence where the alleged burglary as set for [sic] in Counts 6 and 7 of [sic] occurred." On December 22, 1997, without actually ruling on appellant's request, the trial court ordered the state to provide a schematic diagram of the Doskis' residence to appellant's counsel, on or before December 19, 1997.[1]
Appellee responds that the trial court did not abuse its discretion in denying appellant's request. Rather than permitting an examination of the Doskis' home, appellee asserts that the trial court accommodated appellant by making available a schematic layout of the Doskis' home for review.
The grant or denial of discovery motions in a criminal case rests within the sound discretion of trial court, and a reviewing court will not reverse the trial court's decision absent an abuse of that discretion. State v. Wilson (1972),30 Ohio St.2d 199, 201. Discovery beyond Crim.R. 16 requirements is at the trial court's discretion. State v. Landrum (1990),53 Ohio St.3d 107, 119. An abuse of discretion involves more than an error of judgment; it connotes an attitude on the part of the court that is unreasonable, unconscionable, or arbitrary. Statev. Adams (1980), 62 Ohio St.2d 151, 157; State v. Davis (1992),79 Ohio App.3d 450, 454. When applying the abuse of discretion standard, a reviewing court may not substitute its judgment for that of the trial court. Berk v. Matthews (1990), 53 Ohio St.3d 161,169.
Rather than allowing appellant, his counsel, and an investigator access to the Doskis' home, the trial court provided a less intrusive alternative to appellant's request, i.e., a schematic floor plan of the house. Upon reviewing the floor plan, we find that the layout of the home was relatively simple. Based upon the facts in this case, we find that the trial court did not abuse its discretion in denying appellant's request for access to the Doskis' home. Accordingly, appellant's first assignment of error is found not well-taken.
 SECOND ASSIGNMENT OF ERROR
Appellant argues in his second assignment of error that the burglary convictions were not supported by sufficient evidence and were against the manifest weight of the evidence. Specifically, appellant asserts that the evidence was insufficient to establish that any person was present or likely to be present at the time of the trespass. Appellant further asserts that the trial court's rationale was faulty in this regard because it ignores the relevant evidence that was not in dispute,i.e., that appellant entered the house through the garage and there were no cars in the garage. Appellant asserts that once appellant opened the garage door, it would have been evident that there were no cars within. As such, appellant argues that the evidence was insufficient to establish that any person was present in the residence or likely to be present.
Sufficiency of the evidence and manifest weight of the evidence are quantitatively and qualitatively different legal concepts. State v. Thompkins (1997), 78 Ohio St.3d 380, 386. "Sufficiency" applies to a question of law as to whether the evidence is legally adequate to support a jury verdict as to all elements of a crime. Id. In making this determination, an appellate court must determine whether, "after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." State v. Jenks
(1991), 61 Ohio St.3d 259, paragraph two of the syllabus.
Whereas, under a manifest weight standard, an appellate court sits as a "thirteenth juror" and may disagree with the fact finder's resolution of the conflicting testimony. Id. at 387. The appellate court,
 "`reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.'" Id., quoting State v. Martin (1983), 20 Ohio App.3d 172, 175.
R.C. 2911.12(A)(2) states that no person, by force, stealth, or deception, shall trespass in an occupied structure that is a permanent or temporary habitation of any person when any person, other than an accomplice of the offender, is present or likely to be present, with purpose to commit in the habitation any criminal offense. R.C. 2911.12(A)(4) is similar; however, it does not require that the defendant enter the habitation with the purpose of committing a criminal offense. The only element appellant contends was not established was the requirement that someone was "present or likely to be present." As such, we will limit our discussion to the satisfaction of that element alone.
We find appellant's arguments to be without merit. First, we find that the absence of a car in the garage does not automatically establish that no one is present, or likely to be present. There is any number of reasons why a person is home, yet no car is present. Second, both Mr. Doski and appellant testified that Mr. Doski was home during various times during the day, as he worked second shift and was home during the day except when helping out his father-in-law with the farming. Third, the alleged burglary occurred at 11:05 a.m. and Mr. Doski testified that he met his son coming home on the bus from kindergarten at 11:10 a.m.
We further note that appellant testified that he knew the Doskis were not at home because their cars were gone; however, based on its decision, the trial court clearly found appellant's testimony, in general, to lack credibility. Appellant's testimony in this respect was inconsistent because he also testified that he believed someone to be present in the home because the doors were open. Thinking that someone was present, in fact, according to appellant, was the reason he entered the home.
Accordingly, even if appellant could have seen that there were no cars in the garage before entering the residence, we find that there is competent evidence upon which the trier of fact could have relied to find that the house was likely to be occupied at the time of the entry. As such, we find that any rational trier of fact could have found the essential elements of the offense proved beyond a reasonable doubt. See Jenks, supra.
We further find that the conviction was not against the manifest weight of the evidence. Appellant offered an explanation for his entering of the home, i.e., he believed there to be a person in need within, or a trespasser. However, the trial court noted the inconsistencies between appellant's testimony and Mr. Doski's testimony and found appellant's version to be "highly implausible." Moreover, as discussed above, we find that there is credible evidence upon which the trial court could have relied to determine that persons were likely to be present. See Thompkins, supra. Accordingly, we find appellant's second assignment of error not well-taken.
On consideration whereof, this court finds that appellant was not prejudiced or prevented from having a fair trial and the judgment of the Ottawa County Court of Common Pleas is affirmed. Court costs of this appeal are assessed to appellant.
JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist. Loc. App. R. 4, amended 1/1/98.
James R. Sherck, J.
 Richard W. Knepper, J.
 John R. Milligan, J.
CONCUR.
Judge John R. Milligan, retired, sitting by assignment of the Chief Justice of the Supreme Court of Ohio.
[1] When a trial court fails to rule on a motion, an appellate court generally will presume that it was overruled.Takacs v. Baldwin (1995), 106 Ohio App.3d 196. See, also, Newmanv. Al Castrucci Ford Sales, Inc. (1988), 54 Ohio App.3d 166.