TAKACS et al., Appellants,

v.

BALDWIN et al., Appellees.*

[Cite as *Takacs v. Baldwin* (1995), 106 Ohio App.3d 196.]

Court of Appeals of Ohio,
Sixth District, Huron County.

No. H–94–035.

Decided Sept. 1, 1995.

---

* Reporter's Note: A discretionary appeal to the Supreme Court of Ohio was not allowed in (1995), 74 Ohio St.3d 1513, 659 N.E.2d 1289.

198

*Richard S. Lynch,* for appellants.

*Paul F. Meyerhoefer,* for appellees.

ABOOD, Presiding Judge.

This case is before the court on appeal from a judgment of the Huron County Court of Common Pleas which denied the motion of appellants, Imre and Anna Takacs, to amerce appellee, Dick Sutherland, Sheriff of Huron County. Appellants set forth the following assignments of error:

"Assignment of Error I: The trial court erred in adopting the referee's report and thereby denying plaintiffs' motion to amerce as the referee's report did not contain sufficient findings of fact or conclusions of law to allow the trial court to make an independent assessment of the facts and issues raised in this action.

"Assignment of Error II: The trial court erred in failing to examine the record, pleadings and stipulated facts submitted by the parties, and relying solely on the referee's report and recommendations, despite the fact that an objection was raised that the referee's report and recommendation was against the manifest weight of the evidence.

"Assignment of Error III: The trial court erred in adopting the referee's report which was arbitrary and unreasonable, and unsupported by the facts and the law.

"Assignment of Error IV: The trial court erred in adopting the referee's report and denying plaintiffs' motion to amerce as the conclusion of the referee's report was contrary to law and the manifest weight of the evidence."

The undisputed facts of this case are derived from the stipulations of fact filed by the parties, the hearing on appellants' motion to amerce and other evidentiary materials included in the record of this case.

On May 2, 1990, appellants recovered a judgment of almost $173,000 against Jack and Bonita Baldwin. The Baldwins failed to pay the judgment and, on March 18, 1991, appellants filed a praecipe for a writ of execution with the Clerk of the Huron County Court of Common Pleas. On the same day a writ of execution ordering the sheriff to levy on the Baldwins' personal property was issued. The writ directed the sheriff to seize "all tangible personal property in or about the [Baldwins'] premises"; to remove certain specified chattels such as motor vehicles, a motor home, cash, and jewelry; and to take "such antiques as may be removed with reasonable expense; otherwise to be inventoried and secured in the barn upon the premises."

Upon receiving the writ, the sheriff was aware of the fact that the Baldwins were not at their residence. He therefore called Richard Grimes, a Huron County Assistant Prosecutor, for advice on how to properly execute the levy. Grimes told the sheriff not to forcibly enter the home or the barn but, rather, to

tag the doors of buildings and any movable property and to videotape all chattels and other goods found on the premises.

On March 20, 1991, Grimes filed a motion in the trial court, in which he asserted that the Baldwins were out of state and that their house was locked and asked the court for instructions on the procedure to be followed in levying on the personal property in the Baldwin home. On that same day, before the court ruled on the motion,[1] the sheriff went to the Baldwin residence where he found that the doors to the house were locked and that the doors to the barn and a trailer were padlocked. The sheriff then proceeded to place red tags on the house, a barn, a trailer, a motor vehicle, and a pontoon; to videotape all those items that could be viewed through various windows; and to place a copy of the writ of execution on the rear, side door of the residence. The red tags, which were time-stamped and signed by the sheriff, stated: "Levied on by Sheriff of Huron Co.," and warned in large black letters, "DO NOT REMOVE UNDER PENALTY OF LAW."

When appellants learned that the sheriff had failed to take physical possession of the Baldwins' personal property, they filed a petition for a writ of mandamus in the Huron County Court of Common Pleas to compel the sheriff to carry out the execution. On March 26, 1991, the petition was denied.

On March 27, 1991, Jack W. Baldwin filed a Chapter 13 bankruptcy petition in federal court. On March 28, 1991, Robert Lynch, appellants' counsel, notified the sheriff that, due to the bankruptcy proceedings, he should take no further action to levy on the Baldwin property.

The return on the writ of execution was filed with the Huron County Clerk of Courts on May 9, 1991, and bears the endorsement, "DEFENDANTS FILED BANKRUPTCY PER ATTORNEY LYNCH." While the parties stipulated that an inventory listing four items of personal property was made by the sheriff, this unsigned, undated "Inventory and Appraisement of Personal Property" was never filed.

On June 12, 1991, appellants filed another praecipe for writ of execution. Because Jack Baldwin had filed for bankruptcy protection, this second writ ordered the sheriff to levy only upon the property of Bonita Baldwin. The "Execution Information Sheet" specified that all tangible personal property owned by Bonita Baldwin in or about the premises was to be seized. A list of specifics included cash, jewelry, antiques, collectibles, a 1985 Chevrolet Suburban, a 1989 Chevrolet Holiday Rambler Motor Home, a 1983 HAU trailer, and an inflatable pontoon boat. Titles to the motor vehicles, trailer and boat containing

---

1. On March 22, 1991, the court overruled the motion.

VIN or serial numbers for each were attached to the information sheet. In addition, the information sheet advised the sheriff not to seize certain items set forth in Jack Baldwin's bankruptcy petition as his personal property.

On June 13, 1991, the sheriff returned to the Baldwin residence where Bonita Baldwin advised him that she was entitled to bankruptcy protection and called her bankruptcy attorney. Someone from the sheriff's department then talked to the attorney, who advised her that Bonita Baldwin was entitled to bankruptcy protection because of the stay imposed in her husband's bankruptcy proceeding. Although Attorney Lynch, who was at the scene at the time, disagreed with this position, the sheriff's chief deputy left to talk with Prosecutor Grimes, who advised that they could not proceed and to vacate the premises. Consequently, the deputies did not take custody and control over any of the property listed on the Execution Information Sheet. On June 17, 1991, the return on the June 12 writ of execution was filed, which states: "DEFENDANT HAS BANKRUPTCY PROTECTION UNDER CHAPTER 13." On July 26, 1991, Jack and Bonita Baldwin filed a joint Chapter 7 bankruptcy petition in federal district court.

The parties to this action stipulate the tangible personal property located at the Baldwin residence on March 20, 1991 and June 13, 1991 has disappeared and cannot be located. On August 6, 1992, appellants filed their motion to amerce the sheriff for the "full value of the damages, interest and costs" due to appellants on their judgment against the Baldwins.

In February 1993, a hearing was held before a referee on the issue of whether the sheriff had a "good faith" defense to the motion to amerce. At the hearing, Chief Deputy Virgil L. Valentine testified that, before acting pursuant to the March writ of execution, he contacted Lynch, who told him not to tow any motor vehicles found on the Baldwin premises. Valentine also stated that the "red tagging" and videotaping of the Baldwins' personal property was the equivalent of securing, or taking custody and control of, the property.

On June 15, 1994, the referee filed a report in which he recommended that the motion to amerce be denied. That report contained the following relevant findings: as to the March levy, the referee found that "the Sheriff issued a paper levy upon the goods of the defendants" but excused the further securing of the goods which were the subject of the writ of execution because:

"The Writ requires the Sheriff to levy upon the goods of the defendant and make return within sixty days. With respect to the levy, the Sheriff made immediate levy by tagging some of the property of the defendant and could have continued to process this writ and continue to levy upon the goods and make return until April 18, 1991. However, the attorney for plaintiff in recognition of the bankruptcy of the defendant, Jack Baldwin, instructed the Sheriff that no further execution be performed.

"Execution is the levy upon and sale of the property of the debtor by the Sheriff. Upon being instructed to discontinue the execution the Sheriff cannot be held responsible for doing those things which he was instructed to do by the Plaintiff."

The referee further determined that the motion to amerce should be denied as to the attempted June levy on the property of Bonita Baldwin due to the fact that:

"Plaintiff was required to specifically identify those goods which were the goods of Bonita Baldwin which would not have been subject to the bankruptcy stay of Jack Baldwin. The Sheriff notified the plaintiff by his return in a timely fashion of the existence of a problem with this execution [sic] the plaintiff cannot then, without further instruction to the Sheriff look to the Sheriff under the amercement provision for the payment of the entire judgment in excess of $200,000.00 when the plaintiff could have prevented the difficulties by proper notification as to the property to be levied upon and sold. The Sheriff had until August 13, 1991, to cure the problems without further execution, and had the plaintiff be [sic] able to identify the items sought for execution which were not exempt, this would have been accomplished according to the evidence presented."

The referee also observed in his report that the sheriff had sought the advice of the assistant prosecutor and was advised that further execution of the writ was prohibited under bankruptcy law.

Appellants filed numerous objections to the referee's report. Although it did not expressly overrule appellants' objections, on September 16, 1994, the trial court approved and adopted the referee's report and recommendation. It is from this judgment that appellants bring this appeal.

Appellants' third and fourth assignments of error address the dispositive issues in this case. In those assignments, appellants contend that the trial court erred in adopting a referee's report which was arbitrary and unreasonable and unsupported by the manifest weight of the evidence and the law.

While appellants argue that the trial court's judgment is against the manifest weight of the evidence, as set forth above, the facts that were before the referee and the trial court as to the attempted executions were undisputed, having been submitted to the court by stipulation of the parties. Additional evidence was adduced only on the issue of the Sheriff's "good faith defense."

Under R.C. Chapter 2329, a judgment creditor may execute upon the unexempted property of a judgment debtor to satisfy the judgment. R.C. 2329.01. To do so, the judgment creditor files a praecipe for a writ of execution which is issued by the court and orders an officer to levy on the chattels and

goods of the judgment debtor. See R.C. 2329.09. Thereafter, in accordance with R.C. 2329.11:

"The officer to whom a writ of execution is delivered shall proceed immediately to levy it upon the goods and chattels of the debtor. If no goods or chattels can be found, the officer shall indorse on the execution the words 'no goods,' and forthwith levy it upon the lands and tenements of the debtor which are liable to satisfy the judgment."

The abandonment of a writ of execution operates as an absolute discharge of the property of the judgment debtor and the destruction of any rights obtained under the writ. *Johnson v. Graham Lighter Corp.* (1948), 83 Ohio App. 489, 495, 80 N.E.2d 690, 694.

■ A sheriff has sixty days in which to make a return to the court on the writ of execution. R.C. 2329.53. The purpose of the sixty-day return requirement is to protect the sheriff from compulsory proceedings against him until he has had a reasonable time to execute on the writ. *Johnson,* 83 Ohio App. at 498, 80 N.E.2d at 695.

■ In a case where a judgment creditor believes that a sheriff has failed to comply with the requisites of R.C. Chapter 2329, he or she may bring an action against the sheriff for amercement pursuant to R.C. Chapter 2707 or a separate common-law action for damages. *Young v. Hornyak* (1993), 85 Ohio App.3d 296, 619 N.E.2d 1044; *Rodgers v. Rodgers* (1991), 74 Ohio App.3d 580, 599 N.E.2d 751. The case before us was brought pursuant to statute.

R.C. 2707.01 provides, in pertinent part, as follows:

"If an execution or order of sale directed to an officer comes to his hands to be executed, and he neglects or refuses to execute it; * * * such officer shall be amerced in the amount of such judgment, including costs, with ten per cent thereon, to and for the use of the plaintiff or defendant."

■ The amercement statute is highly penal in nature. *Ryan v. Carter* (1993) 67 Ohio St.3d 568, 569, 621 N.E.2d 399, 400; *Langdon v. Summers Admr.* (1859), 10 Ohio St. 77, at paragraph two of the syllabus; *Rodgers v. Rodgers, supra,* 74 Ohio App.3d at 583, 599 N.E.2d at 753. See, also, R.C. 1.11 (which governs the liberal construction of remedial laws but is inapplicable to "laws affecting personal liberty, relating to amercement, or of a penal nature"). It is therefore "incumbent on the party seeking to enforce its provisions, to make a case clearly within the letter and the spirit of the statute." *Langdon, supra,* 10 Ohio St. 77, paragraph two of the syllabus. See, also, *Moore v. McClief* (1864), 16 Ohio St. 50, 54; *Conkling v. Parker* (1859), 10 Ohio St. 28, 31; *Bushnell v. Eaton* (1834), Wright 720. Once the moving party has made his or her case, however,

amercement penalties "must necessarily be adjudged against the sheriff unconditionally and without the exercise of the discretion of the court, allowed in most other cases." *Langdon,* 10 Ohio St. at 80.

In the case before us, appellants argued to the trial court that the sheriff should be amerced because he neglected or refused to (1) execute a levy on the Baldwins' personal property on March 20, 1991; (2) properly execute a levy on the Baldwins' personal property on March 20, 1991; or (3) file a proper inventory on the property levied on March 20, 1991; and/or (4) execute the levy on Bonita Baldwin's personal property on June 13, 1991. The sheriff responded to appellants' arguments by asserting that Attorney Lynch directed him to stop execution of the first writ due to bankruptcy proceedings and that his actions were within the "spirit" of the statute because he, in good faith, heeded the advice of Prosecutor Grimes when he declined to execute the second writ.

## THE MARCH WRIT OF EXECUTION

As to the trial court's determination that a "paper levy" on the Baldwins' property occurred on March 20, such a levy is one which is nominal and is described as the failure of the sheriff to make a "distinct, open, or unequivocal assertion of dominion * * * over the property, such as its nature and character would admit of, or as constituted any interference with the possession of the judgment debtor, either actual or constructive." *Murphy Bros. v. Swadener* (1877), 33 Ohio St. 85, 92–93. A paper levy is void and leaves the goods and chattels of the judgment debtor subject to seizure in favor of other creditors. *Id.* at paragraph three of the syllabus.

The court also found that the sheriff made "immediate" levy by tagging "some" of the judgment debtors' property and that this process could have continued for sixty days but for the bankruptcy proceedings. The evidence in this case could support such a conclusion. That is, the March 20 levy could be considered the commencement of the execution of the writ allowing the sheriff a reasonable time (sixty days) in which to complete execution. In addition, the evidence offered supports a finding that appellants abandoned execution of this writ when, on March 28, 1991, their attorney told the sheriff to cease execution on the writ.

Accordingly, in considering the evidence offered by means of stipulation, we find that the sheriff did not neglect or refuse to execute on the March writ.

## THE JUNE WRIT OF EXECUTION

The trial court determined that the failure to execute on the property of Bonita Baldwin was the fault of the appellants because they failed to specifically identify her separate property. The court attributed the sheriff's alleged neglect

in executing the writ to appellants' failure to cure the defects in the writ within the sixty-day return period. Neither of these arguments, however, was raised by the parties. Rather, the sheriff maintained that he acted in "good faith" because he was informed that Bonita Baldwin was a party to the Chapter 13 bankruptcy proceedings.

Upon review of the Execution Information Sheet accompanying the June writ of execution, we find that it provides uncontradicted evidence that the writ was specific as to which property should be seized by the sheriff. Upon consideration thereof, this court finds further that, because the writ was not defective, appellants had no duty to "cure" the problem within the sixty-day return period, and the court erred in finding that the sheriff's failure to execute on the June writ was appellants' fault.

## GOOD FAITH EXCEPTION

The sheriff maintains that even if he neglected to execute on either of the writs of execution, the evidence demonstrates that he acted in good faith and is, therefore, not subject to amercement.

Because the amercement statute is penal in nature, it must be construed in favor of the execution officer. *Webb v. Anspach* (1854), 3 Ohio St. 522; *Borst v. Donnelly* (App.1924), 3 Ohio Law Abs. 21. Before a sheriff can be subjected to the statute's penalties, it must be proven that the sheriff's alleged neglect falls not only within the letter but also the spirit of the statute. *Langdon,* 10 Ohio St. 77, paragraph two of the syllabus. In discussing the "letter and spirit" of the amercement statute, the *Conkling* court stated:

"The statute was, no doubt, intended to enforce and secure the proper execution of process by the ministerial officer to whom it may be directed. But where the requirements of the statute have been substantially complied with, so far as the interests of either party can require, a construction closely adhering to its letter, without reference to its spirit and substance, would often work manifest injustice, and convert its wholesome provisions, in the hands of crafty and unscrupulous parties, into mere snares for the unsuspecting, though honest and faithful officer." *Id.,* 10 Ohio St. at 32.

In *Mine Safety Appliances Co. v. Best* (1947), 49 Ohio Law Abs. 552, 76 N.E.2d 108, the Tuscarawas Court of Common Pleas found that, in answer to a motion to amerce, a sheriff could prevail on a "good faith" defense. In a more recent case, *Rodgers v. Rodgers* (1991), 74 Ohio App.3d 580, 586, 599 N.E.2d 751, 755 (Harsha, J., dissenting), Judge Harsha stated that a sheriff's "good faith belief" in the fact that he could not proceed with an execution until an exemption hearing was held took him outside the spirit of the amercement statute. Upon

consideration of the foregoing and the fact that the Supreme Court of Ohio has never foreclosed on the existence of such a defense, this court finds preliminarily that a good faith defense is available in an R.C. Chapter 2707 action.

Having made that finding, we must now determine what constitutes "good faith" in the context of an amercement proceeding. "Good faith" is an intangible and abstract quality which encompasses, among other things, an honest belief, the absence of malice and the absence of design to defraud or to seek an unconscionable advantage. It connotes an honesty of intention and freedom from knowledge of circumstances which would put the party acting in good faith on inquiry. Black's Law Dictionary (6 Ed.1990) 693. A party is commonly characterized as acting in "good faith" when he or she exerts an "honest, purposeful effort." See, e.g., *In re Weaver* (1992), 79 Ohio App.3d 59, 63, 606 N.E.2d 1011, 1014 (good faith effort to implement a reunification plan under R.C. Chapter 2151); *Kalain v. Smith* (1986), 25 Ohio St.3d 157, 25 OBR 201, 495 N.E.2d 572, syllabus (determination of an award of prejudgment interest under R.C. 1343.03).

In this case, a hearing was held on the issue of good faith and additional, sometimes disputed facts, were adduced at this hearing. Based on the evidence presented at the hearing and the stipulated facts submitted by the parties, the trial court found, in essence, that the sheriff had established a good faith defense.

Upon consideration of the entire record of proceedings in the trial court, this court finds that there was competent, credible evidence presented to support the trial court's finding as to the sheriff having made reasonable, good faith efforts to execute both the March and June writs of execution. See *C.E. Morris Co. v. Foley Constr. Co.* (1979), 54 Ohio St.2d 279, 8 O.O.3d 261, 376 N.E.2d 578, syllabus.

For the foregoing reasons, appellants' third and fourth assignments of error are found not well taken.

## THE REFEREE'S REPORT

In their first assignment of error, appellants assert the trial court erred by adopting the referee's report because it did not contain sufficient findings of fact or conclusions of law upon which the court could make an independent assessment of the facts and issues raised in the action.

Civ.R. 53(A) allows a trial court to appoint a referee to hear an issue or issues in a case in which the parties are not entitled to a jury trial. However, under Civ.R. 53, it is the primary duty of the trial court, and not the referee, to act as the judicial officer. *Normandy Place Assoc. v. Beyer* (1982), 2 Ohio St.3d

102, 105, 2 OBR 653, 655, 443 N.E.2d 161, 164. Referees serve only in an advisory capacity to the court and have no authority to render final judgments affecting the parties. *Nolte v. Nolte* (1978), 60 Ohio App.2d 227, 14 O.O.3d 215, 396 N.E.2d 807, paragraph two of the syllabus. Indeed, the court must approve the referee's report and enter it upon its own record in order for that report to have any valid or binding effect. *Normandy Place Assoc.*, 2 Ohio St.3d at 105, 2 OBR at 655, 443 N.E.2d at 164.

Civ.R. 53 also sets forth the responsibilities and duties that the referee is required to perform. After hearing an issue, the referee is required to prepare a report and submit this report to the trial court for its review. Civ.R. 53(E)(1). Civ.R. 53(E)(5) provides, in material part:

"The referee's findings of fact must be sufficient for the court to make an independent analysis of the issues and to apply the appropriate rules of law in reaching a judgment order. The court may adopt the referee's recommendations about appropriate conclusions of law and the appropriate resolution of any issues. However, the court shall determine whether there is any error of law or other defect on the face of the referee's report even if no party objects to an error or defect. The court shall enter its own judgment on the issues submitted for action and report by the referee."

A referee is not required in his report to recite all of the evidence presented to him at the trial. The referee must, however, state the essential facts that form the basis for the referee's recommendation to the trial judge. *Zacek v. Zacek* (1983), 11 Ohio App.3d 91, 11 OBR 143, 463 N.E.2d 391; *State ex rel. Bedard v. Lockbourne* (1990), 69 Ohio App.3d 452, 459, 590 N.E.2d 1327, 1331. Absent such a statement, the court cannot adopt the recommendation because it lacks the necessary information to make the required independent analysis of the case. *Nolte v. Nolte*, 60 Ohio App.2d 227, 14 O.O.3d 215, 396 N.E.2d 807, paragraph one of the syllabus.

In this case, the referee did set forth several findings of fact and referred to the stipulations of fact filed by the parties. Upon consideration thereof, this court finds that the report was sufficient to provide the basis for an independent analysis by the trial court. Accordingly, appellants' first assignment of error is found not well taken.

Appellants' second assignment of error alleges that, due to the fact that objections were raised to the referee's report and recommendation on the ground that it was against the manifest weight of the evidence, the trial court erred by relying solely on the report and recommendation to reach its judgment. Appellees urge that appellants failed to reference the transcript of the proceedings below and, therefore, the trial court could disregard their objections.

When a trial court fails to rule on a motion, an appellate court generally will presume that it was overruled. See *Newman v. Al Castrucci Ford Sales, Inc.* (1988), 54 Ohio App.3d 166, 561 N.E.2d 1001; *Kane v. Ford Motor Co.* (1984), 17 Ohio App.3d 111, 17 OBR 173, 477 N.E.2d 662. We will therefore proceed as if the trial court overruled those objections.

Civ.R. 53(E) provides, in part:

"(2) Objections [to a referee's] shall be specific and state with particularity the grounds of the objection. Upon consideration of the objections, the court may adopt, reject, or modify the report; hear additional evidence; return the report to the referee with instructions; or hear the matter itself.

" * * * *

"(6) Factual findings. On appeal, a party may not assign as error the court's adoption of a referee's finding of fact unless an objection to that finding is contained in that party's written objections to the referee's report. The court may adopt any finding of fact in the referee's report without further consideration unless the party who objects to that finding supports that objection with a copy of all relevant portions of the transcript from the referee's hearing or an affidavit about evidence submitted to the referee if no transcript is available. In deciding whether to adopt a referee's finding of fact, the court may disregard any evidence that was not submitted to the referee unless the complaining party demonstrates that with reasonable diligence he or she could not have discovered and produced that evidence for the referee's consideration."

In the present case, appellants filed several objections to the referee's report. Most of these objections were based upon stipulated facts, as mentioned by the referee in his report. As a consequence, appellants were not required to include those portions of the transcript which supported their objections.

The trial court expressly stated that it made an independent analysis of the issues before the referee based upon an examination of the referee's report and recommendation. We must assume therefore that the trial court considered appellants' objections and, in its discretion, chose to adopt the referee's report. *Evicks v. Evicks* (1992), 79 Ohio App.3d 657, 664, 607 N.E.2d 1090, 1094. We cannot say that this decision was unreasonable, arbitrary or unconscionable. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 482–483, 450 N.E.2d 1140, 1142.

Appellants' second assignment of error is found not well taken.

On consideration whereof, this court finds that substantial justice was done the party complaining and the judgment of the Huron County Court of Common Pleas is affirmed. Costs of this appeal are assessed to appellants.

*Judgment affirmed.*

SHERCK, J., concurs.

MELVIN L. RESNICK, J., dissents.

MELVIN L. RESNICK, Judge, dissenting.

Although I would prefer to concur with the majority in this case, I do not believe that the law of Ohio affords a good faith defense to an officer who is the subject of an amercement proceeding.

Despite the principle of strict construction of the amercement statute, courts have, in the past, declined to create a "good faith" defense to an amercement action. See, *e.g., Wadworth v. Parsons* (1834), 6 Ohio 449; *Rodgers v. Rodgers* (1991), 74 Ohio App.3d 580, 599 N.E.2d 751.

The only court to permit the defense of "good faith" in an amercement action is the Tuscarawas County Court of Common Pleas. See *Mine Safety Appliances Co. v. Best* (1947), 49 Ohio Law Abs. 552, 76 N.E.2d 108. The version of the amercement statute applied in *Mine Safety Appliances Co.* was different from the current provisions in that an officer who demonstrated "to the satisfaction of the court, that he was prevented by unavoidable accident" from executing or returning a writ could not be amerced. *Id.* at 554, 76 N.E.2d at 109, quoting G.C. 12105.

Moreover, the rule set forth in *Mine Safety Appliances Co.* reads:

"While a sheriff is justified in executing a writ that is regular on its face and which may have been wrongfully issued, he may not be amerced for failure to complete an execution *where no injury has resulted,* if he has acted in good faith, and he has made a return within sixty days * * *." *Id.*

It is plain that this rule is not applicable to the instant case because admitted injury did occur to appellants as a result of the sheriff's neglect in failing to levy on Bonita Baldwin's personal property. Cf. *Rodgers v. Rodgers,* 74 Ohio App.3d at 586–587, 599 N.E.2d at 755 (Harsha, J., dissenting) (defense of good faith can be employed in deciding whether an officer's conduct is within the spirit of the amercement statute); *Wadworth v. Parsons* (1834), 6 Ohio 449, 452 (Wright, J., dissenting) (implying that if a sheriff executes a writ "without fault," he acts in good faith and cannot be amerced).

Further, Ohio courts have had ample opportunity to create a "good faith exception" and have declined to so. In its most recent pronouncement involving R.C. Chapter 2707, the Supreme Court of Ohio decried amercement as an "archaic procedure." *Ryan v. Carter* (1993), 67 Ohio St.3d 568, 569, 621 N.E.2d 399, 401. Nevertheless, the *Ryan* court followed the "Draconian" enforcement procedures in the statute and amerced the sheriff in that case for the full amount of the judgment owed the judgment creditor plus a ten percent surcharge. *Id.*

The court specifically stated that it would enforce the provisions of R.C. Chapter 2707 until the General Assembly repealed the statute. *Id.* Although *Ryan* does not deal directly with the "good faith" question, it is evidence of the high court's intention to, in a case where a sheriff neglects to execute on a writ, unconditionally impose the penalties provided in the statute.

Finally, I would decline to create a "good faith" defense based on the fact that the sheriff in this case was informed by three individuals that Bonita Baldwin had bankruptcy "protection." The *Conkling* court indicated that substantial compliance with the statute governing an execution on a judgment was necessary prior to considering whether a sheriff's conduct was outside the "spirit" of the amercement statute. *Id.*, 10 Ohio St. at 32. Further, even in his dissent in *Rodgers*, Judge Harsha noted that the officer in that case had "substantially complied" with his duties in addition to acting in good faith. *Id.*, 74 Ohio App.3d at 587, 599 N.E.2d at 755.

Unlike the circumstances in *Mine Safety Appliances Co.* or *Rodgers* or even in *Ryan*, the sheriff in the case before us did not substantially comply with his statutory duties in executing the June writ. That is, he made no attempt to execute the writ. Rather, the stipulated record reveals that, despite the fact that the writ set forth specific property to be seized and the fact that appellants' attorney was present and urging him to seize this property, the sheriff relied on the hearsay information provided by persons, other than appellants, to avoid his mandatory duty. The sheriff's reliance is not a defense to an allegation of a failure to levy process. See, generally, 70 American Jurisprudence 2d (1987) 359, Sheriffs, Police and Constables, Section 173.

To the contrary, the fact that certain property was listed as exempt in the writ and the conflict in the status of Bonita Baldwin put the sheriff on notice to inquire into the realities of the situation. He did not do so. Instead, he unjustifiably relied on hearsay information, neglected to conduct any further inquiry, made no further effort to execute on the writ and returned the writ (bearing false, hearsay information) only four days after the attempt to execute and over one month before Bonita Baldwin filed a petition in bankruptcy. This evidence does not support the creation of a "good faith" defense in this particular case.

Accordingly, while I agree with the Supreme Court of Ohio in deeming the amercement statute "archaic" and "Draconian," the legislature has not yet taken any action to repeal or amend R.C. Chapter 2707 and I cannot agree with the majority in the creation of a "good faith" exception.