{¶ 1} Defendant-appellant, Daniel Roth, appeals from a Judgment Entry-Decree of Divorce filed by the Cuyahoga County Court of Common Pleas, Domestic Relations Division, on November 14, 2006. For the reasons that follow, we reverse the judgment of the trial court.
 {¶ 2} Appellant and plaintiff-appellee, Enza Roth, were married on February 14, 1984. Two children were born during the marriage. On July 16, 2004, Enza Roth filed an action for divorce. Appellant answered and filed a counterclaim for divorce on July 22, 2004. At the time of the action, the parties had been married more than 20 years. No minor children were involved but there were issues relating to substantial assets and liabilities.
 {¶ 3} Appellant is a licensed attorney. Appellee was the secretary and paralegal in his law practice. The divorce action was acrimonious from the beginning. Appellee obtained a temporary protection order in the Shaker Heights Municipal Court on July 14, 2004, excluding appellant from the marital home claiming abuse. Both sides then sought and were granted numerous restraining orders against each other to prevent depletion of the many bank and investment accounts and to prevent the unauthorized transfer of both real and personal property. Appellee sought and was granted temporary spousal support. Appellant opposed granting temporary support and sought a hearing to oppose the order. Appellant also moved to vacate the support order, to have funds released to him, and to compel discovery. *Page 4 
 {¶ 4} On April 26, 2005, appellee discharged her counsel of record, Thomas J. LaFond. On June 15, 2005, attorney Joseph G. Stafford entered an appearance as counsel for appellee. Appellant moved the court to disqualify Stafford as counsel, claiming that he had previously consulted with Stafford on issues relating to the divorce. The court denied appellant's motion. Appellant filed an appeal of that denial with this court which was dismissed for lack of a final appealable order.[1]
 {¶ 5} On September 8, 2005, appellant moved to compel discovery, to vacate the temporary order of support granted by the court in October 2004, to have his previously filed motions added to the scheduled hearing dates of September 28 and 29, 2005, to have appellee cited for contempt, and to have the hearing dates continued to a later date to allow him time to receive responses to his discovery requests.
 {¶ 6} The trial court refused to add appellant's previously filed motions to the pending hearing dates or to continue the hearings. Following the hearings on September 28 and 29, the court issued an order appointing an accountant to reconstruct the parties' income to facilitate the filing of tax returns, and ordered the release of certain funds to allow appellee to pay the mortgages, taxes, and insurance on the couple's Ohio and Florida properties. *Page 5 
 {¶ 7} The parties then entered into mediation. On April 12, 2006, following months of mediation, both parties in open court, executed a separation agreement that had been drafted by the mediator. The agreement addressed and settled all issues relating to the parties' assets, liabilities, and income. There were handwritten revisions to the agreement that were initialed by each party prior to signing the agreement.
 {¶ 8} The agreement gave ownership of the house in Pepper Pike to appellee, while appellant got ownership of the Florida condominium. The couple's four automobiles were likewise divided between the parties. The tangible personal property contained within the two houses was divided between husband and wife according to an inventory prepared during mediation and incorporated into the agreement as Schedule 1.
 {¶ 9} The agreement also divided the couple's other intangible personal property such as cash, bank accounts, pension plans, and insurance in such a way as to represent "an equitable division of the parties' marital assets." In exchange for a lump sum payment, appellee agreed to transfer ownership of all accounts listed in Schedule 2 to appellant. The agreement also provided that she, "waives all interest in, and Husband shall receive as his separate property, his bank accounts and any other accounts, including joint accounts, not otherwise divided herein."
 {¶ 10} Each party was separately questioned on the record concerning the agreement. Appellee testified that she was entering the agreement of her own free *Page 6 
will and against the advice of her legal counsel. She stated that she had made a full disclosure of all of her assets and liabilities in the case and understood the terms and conditions of the agreement. Appellant likewise was questioned and testified that he had read the document thoroughly, asked questions of his counsel concerning it, and initialed all of the changes prior to signing on the last page. Appellant also stated that he had disclosed all of his assets and liabilities and that in his opinion the agreement was equitable.
 {¶ 11} To facilitate the timely transfer of the assets prior to the court signing the final decree of divorce, the parties submitted an agreed interim judgment dissolving the restraining orders against certain banks and investment companies. Charles Schwab Co., Fidelity, Crowell Weedon Co., and American Century were each ordered to prepare a check in appellee's name for a specified amount and to forward those checks to the mediator for later delivery. The court additionally ordered appellant to prepare the quitclaim deed to the Ohio property as per the agreement. Both parties agreed to have all necessary transfers of assets completed within 30 days. The court set a date of June 7, 2006 for the parties to return to have the court sign the final judgment.
 {¶ 12} Appellant failed to transfer the property and the financial institutions failed to release the funds as ordered. Both parties continued to pummel the court with motions over the next few months. Appellant filed a motion for contempt on May 22, 2006, alleging that appellee violated the August 2004 restraining order and *Page 7 
withdrew $42,000 from a joint account in May of 2005. Appellant then filed a motion to allocate undisclosed assets relating to the $42,000 allegedly withdrawn by Mrs. Roth in 2005. Both parties filed motions to enforce the separation agreement. Appellant then filed a motion to dismiss his motion to enforce the separation agreement. Appellee filed motions to show cause and for attorneys fees against Charles Schwab, Fidelity, and American Century to have the funds released pursuant to the court's order.
 {¶ 13} On August 8, 2006, the court held another hearing in which all parties and counsel were present.[2] The court ordered the termination of discovery stating, "this Court finds that this matter has been pending for more than two (2) years, that the issues for trial are few, in light of the Separation Agreement which was executed by all parties and counsel on April 12, 2006; and that the matter has been set for trial before this Court on October 4, 2006."
 {¶ 14} The hearing was actually held on October 6, 2006 with all parties present. The issue of the transfer of property was resolved and the court issued orders pursuant to Civ.R. 70, vesting each party with authority to effectuate the transfer of the real properties as agreed in the April 12, 2006 agreement. An order was also issued pursuant to Civ.R. 70 authorizing appellee to effectuate the transfer of the funds in the Charles Schwab and Fidelity accounts. The court ordered each *Page 8 
side to brief any remaining issues relating to the enforcement of the separation agreement.
 {¶ 15} Mrs. Roth filed her brief in support of the separation agreement on October 10, 2006. Appellant filed his brief in opposition on October 23, 2006. Appellant raised two issues in opposition. He argued that the agreement was invalid because Schedules 1 and 2 referenced in the agreement were not attached as stated in the agreement. He also raised the issue of appellee's allegedly improper removal of funds from an account at Parkview Federal Savings Bank in March of 2005.
 {¶ 16} On October 30, 2006, the trial court issued its ruling granting appellee's motion to enforce the in-court agreement as written and signed on April 12, 2006. The court found that both parties inadvertently failed to attach the agreed-to schedules to the settlement document when it was presented in court. The court adopted the separation agreement with the schedules attached and ordered appellee's counsel to prepare a judgment entry of divorce, incorporating the agreement with attachments, and to submit it to the court within 14 days for execution. Appellee filed the proposed entry on November 6, 2006. Appellant filed his objection to the entry on November 8, 2006, "for the reason that the attached Schedules 1 and 2 were not agreed to by the Defendant."
 {¶ 17} The trial court issued the judgment entry of divorce on November 14, 2006 granting the parties a divorce from each other, ordering the separation agreement into execution, and ordering that all pending motions were to be heard *Page 9 
post-decree. Appellant timely filed this appeal from that judgment raising six assignments of error for review. Appellee did not file a brief for consideration in this appeal. Appellant's assignments of error are as follows.
 {¶ 18} "I. IT WAS REVERSIBLE ERROR TO ADOPT THE JUDGMENT ENTRY OF DIVORCE SUBMITTED BY THE WIFE WHEN THE HUSBAND TIMELY FILED OBJECTIONS TO THE PROPOSED JUDGMENT ENTRY PURSUANT TO LOCAL RULE 28(B)(1) AND WHERE THE ENTRY OF FINAL JUDGMENT SPECIFICALLY VIOLATED THE PROVISIONS OF THE PREVIOUSLY APPROVED SEPARATION AGREEMENT.
 {¶ 19} "II. IT WAS REVERSIBLE ERROR TO ADOPT THE SIGNED SEPARATION AGREEMENT WHICH WAS IN REALITY A MEMORANDUM TO ENTER INTO A SEPARATION AGREEMENT BECAUSE THE AGREEMENT CONTAINED A CONDITION SUBSEQUENT THAT HAD NOT YET BEEN PERFORMED. IF THE CONDITION SUBSEQUENT DOES NOT OCCUR THEN THE SEPARATION AGREEMENT WILL NOT COME INTO BEING. IT WAS FURTHER REVERSIBLE ERROR TO ADOPT A SEPARATION AGREEMENT THAT WAS DIFFERENT FROM THE ONE ORIGINALLY APPROVED BY THE COURT BECAUSE THE APPROVED AGREEMENT HAD NO EXHIBITS ATTACHED AND THE UNSIGNED EXHIBITS WERE PROVIDED BY THE WIFE AFTER THE FACT AND WERE NOT SUBMITTED TO THE HUSBAND FOR APPROVAL PRIOR TO THEIR SUBMISSION TO THE COURT." *Page 10 
 {¶ 20} Because appellant argues the first two assignments together, we will address them together.
 {¶ 21} Loc.R. 28 of the Domestic Relations Division of the Cuyahoga County Court of Common Pleas permits the court to direct either party or counsel to prepare a proposed journal entry reflecting the terms of an in-court agreement. Loc.R. 28(B)(1). The rule requires the preparing counsel to submit the proposed entry to opposing counsel and the court for review. Id. Opposing counsel may then file written objections to the proposed entry. Id. Local rules of court are, in general, procedural in nature. The court of common pleas has discretion in interpreting its own local rules. Boieru v. State Emp. Relations Bd. (1988),54 Ohio App.3d 23. The domestic relations court is entitled to exercise wide discretion in the matters before it. Booth v. Booth (1989), 44 Ohio St.3d 142. We review the trial court's application of Loc.R. 28 under an abuse of discretion standard. An abuse of discretion is more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable. Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219. When applying the abuse of discretion standard, a reviewing court is not free to merely substitute its judgment for that of the trial court. In re Jane Doe I (1991), 57 Ohio St.3d 135.
 {¶ 22} Appellant's sole objection to the proposed judgment entry was that the two schedules referenced in the agreement as being attached to the agreement were in fact not attached when presented in court on April 12, 2006. Appellant argues that *Page 11 
for that reason the separation agreement is not valid and the divorce decree must be vacated. We find some merit to this argument.
 {¶ 23} A separation agreement is a contract between parties who bear a confidential relationship to each other. Lowman v. Lowman (1956), 166 Ohio St. 1. Settlement agreements are generally favored in the law. Where parties enter into a settlement agreement in the presence of the trial court, such an agreement constitutes a binding contract.Spercel v. Sterling Industries, Inc. (1972), 31 Ohio St.2d 36. "Neither a change of heart nor bad legal advice is a ground to set aside a settlement agreement." Grubic v. Grubic, et al. (Sept. 9, 1999), Cuyahoga App. No. 73793, quoting Walther v. Walther (1995),102 Ohio App.3d 378, 383.
 {¶ 24} Before incorporating the terms of a separation agreement into a judgment, the court is obliged to determine that the agreement is "fair and equitable." Adams v. Adams (Apr. 8, 1982), Cuyahoga App. No. 43848, citing Knese v. Hake (1906), 16 Ohio Dec.N.P. 466, 3 Ohio L.Rep. 610. A trial court is permitted to enter a judgment which accurately reflects an agreement made in open court and read into the record. Barille v.O'Toole, Cuyahoga App. No. 82063, 2003-Ohio-4343, citing Bolen v.Young (1982), 8 Ohio App.3d 36.
 {¶ 25} In the case at bar, the trial court held a full hearing on the separation agreement on April 12, 2006. The agreement was read into the record. Appellant was represented by legal counsel who questioned appellant regarding the agreement and its terms. Appellant stated that prior to entering into the agreement, he and *Page 12 
appellee had been in mediation for approximately three months. He stated that the agreement was a result of the mediation and that the mediator had prepared the agreement. The record reflects he was questioned as follows:
 {¶ 26} "Q. Have you reviewed that agreement?
 {¶ 27} "A. Yes.
 {¶ 28} "Q. Have you read it thoroughly?
 {¶ 29} "A. Yes.
 {¶ 30} "Q. Have you asked questions of counsel, your counsel, concerning the agreement?
 {¶ 31} "A. Yes.
 {¶ 32} "Q. Do you understand the agreement?
 {¶ 33} "A. Basically.
 {¶ 34} "Q. Did you affix your signature to the last page of the agreement?
 {¶ 35} "A. Yes, I did.
 {¶ 36} "Q. Did you also affix your initials to changes and modifications that are handwritten in that agreement?
 {¶ 37} "A. Yes.
 {¶ 38} "Q. Have you disclosed to your wife all of your assets and all of your liabilities?
 {¶ 39} "A. Oh, yes. *Page 13 
 {¶ 40} "Q. Is this agreement in your opinion equitable under all the circumstances?
 {¶ 41} "A. Taking all things into account.
 {¶ 42} "Q. Is it your desire that this agreement be incorporated into a judgment entry of divorce at some point in time down the road?
 {¶ 43} "A. I certainly hope so."
 {¶ 44} The trial court found that at the April 12, 2006 hearing, both parties inadvertently failed to attach Schedule 1 and Schedule 2 to the agreement. Item five of the agreement states that the household and other items of personal property which are located in the couples two homes "shall be divided among the parties according to the Inventory attached hereto as Schedule 1." Appellant's initials are next to this provision. Item 9 of the agreement covers cash, bank accounts, and other intangible property and states: "Wife hereby waives all interest in, and Husband shall receive, all accounts identified in the attached Schedule 2." Appellant's initials are next to this provision also.
 {¶ 45} Neither party brought the absence of the schedules to the court's attention. Based on appellant's in-court testimony, it is uncontroverted that he agreed to divide the marital property according to the terms of the agreement which included the two schedules. Additionally, in an affidavit dated June 15, 2006 and attached to his motion to enforce the separation agreement, appellant contests his *Page 14 
wife's withdrawal of money from the Parkview Federal account and states, "[t]hese funds were not memorialized in the `schedule 2' upon which Affiant relied in negotiating the Separation Agreement." We agree with the trial court that the schedules were agreed to by the parties, intended by the parties to be attached to the separation agreement, and merely left off through inadvertence.
 {¶ 46} However, there remains a factual question with regard to whether the schedules appellee submitted to the court with her proposed journal entry of divorce are the same schedules agreed to by the parties in mediation and referenced in the body of the separation agreement. The trial court is required to hold an evidentiary hearing when the party opposing the agreement alleges fraud, duress, undue influence, or any other factual dispute concerning the existence of the terms of a settlement agreement. Grubic, supra, citing Morform Tool Corp. v. KecoIndustries, Inc. (1971), 30 Ohio App.2d 207. Appellant should have been given an opportunity to prove to the court that the schedules submitted by appellee are not the ones agreed to by the parties and intended to be attached to the agreement when it was read into the record in court on April 12, 2006. Therefore, the trial court erred by failing to hold a hearing to determine the legitimacy of the submitted schedules.
 {¶ 47} Additionally, the separation agreement specifically states at Item 9: "The Journal Entry terminating the parties' marriage will not be journalized until such time as both parties have certified that each has received all of the property he or she is entitled to receive pursuant to this Separation Agreement and the attached Schedules *Page 15 
1 and 2." There is no such certification in the record. The trial court erred by not obtaining such certification from the parties.
 {¶ 48} Appellant next argues that the separation agreement was really a memorandum to enter into an agreement contingent upon numerous conditions subsequent that had yet to be performed. We disagree. The record reflects that at the April 12, 2006 hearing on the agreement, the parties identified those things that needed to be completed prior to the court journalizing the final decree. The parties needed to transfer title to the Ohio property to appellee and the title to the Florida property to appellant. Additionally, the restraining orders on the various bank and investment accounts needed to be dissolved and the certain funds identified in the agreement needed to be released to appellee. The remainder of the funds became appellant's under the terms of the agreement. As part of fulfilling the agreement's requirements, both parties also agreed in court to an interim entry that ordered the restraining orders on the accounts dissolved and allowed the funds to be disbursed according to the agreement.
 {¶ 49} Appellant failed to timely follow through on his agreement to complete the transfer of the real property and to get the financial institutions to release the funds to appellee. Following additional hearings on these issues, the trial court issued its orders giving appellee authority pursuant to Civ.R. 70 to effectuate the transfers on her own. This completed the outstanding items identified at the April hearing. *Page 16 
 {¶ 50} Appellant's final attack on the separation agreement concerns his allegation that appellee improperly withdrew funds in the amount of $42,000 from one of the couple's joint accounts at Parkview Federal Savings Bank. Appellant claims the funds were removed fraudulently and without his knowledge from the joint account 13 months prior to the separation agreement in violation of a restraining order. Appellant asserts that his wife's failure to disclose the removal of the funds violated the "spirit and the substantive intent" of the full disclosure clause of the agreement.
 {¶ 51} The record reflects that both parties participated in mediation after March 2005. Both parties were represented by counsel and reached an agreement as to an equitable distribution of all marital property. Both parties stated in open court on April 12, 2006 that they had made a full disclosure of all assets and liabilities and had approved the distribution of property per the agreement. Both parties agreed that, with the exception of the lump sum distribution of funds agreed to in the separation agreement, appellant would retain ownership of all accounts owned individually by appellant or jointly by the couple.
 {¶ 52} The record reflects that the Parkview Federal account was a joint account. Presumably prior to negotiating the separation agreement, both appellant and appellee would have had full access to information about the account, including the balance in the account and any previous withdrawals from the account, including the contested withdrawal. However, since this account is not listed on Schedule 2, *Page 17 
which purports to be a listing of all financial assets owned by the parties in 2004, it appears that neither party disclosed this account during mediation. This raises a question of fact as to whether this omission was a matter of fraud, as alleged by appellant, or one of mutual mistake.
 {¶ 53} We find no merit to appellant's assertion that the signed separation agreement was not a valid agreement. However, because we conclude that prior to entering the judgment entry of divorce, the trial court should have conducted an evidentiary hearing to determine the questions of fact relating to the authenticity of the schedules attached to the journal entry, whether the parties have certified to receiving all of the property due them under the agreement, and appellant's allegations of fraud in the inducement as to the agreement, appellant's first two assignments of error are sustained in part.
 {¶ 54} "III. IT WAS REVERSIBLE ERROR TO ENTER FINAL JUDGMENT WITHOUT THE COURT EVER CONDUCTING A CIVIL RULE 75(N) HEARING ON TEMPORARY SUPPORT ALTHOUGH THE SAME WAS TIMELY REQUESTED BY THE HUSBAND."
 {¶ 55} Appellant argues that the trial court's failure to hold a hearing on his objections to the court's order of temporary support necessitates the final decree be vacated.
 {¶ 56} Civ.R. 75(N)(1) authorizes the trial court to grant spousal support pendente lite to either party without oral hearing upon the filing of a motion and *Page 18 
supporting affidavit. The other party may then file counter affidavits within 14 days of the filing of the motion. Civ.R. 75(N)(2). Upon request, in writing, the court shall grant the party so requesting an oral hearing within 28 days to modify the temporary order. Id.
 {¶ 57} Upon appellee's motion, the trial court issued a temporary support order on October 21, 2004. Appellant filed a written request for oral hearing on October 26, 2004. Appellant then filed a motion to suspend or abate the support order on November 9, 2004. The record does not reflect that a hearing was held as requested by appellant.
 {¶ 58} "Generally, the failure to follow procedural rules does not constitute reversible error unless the appellant demonstrates prejudice. This general rule has also been applied to procedures set forth for domestic relations courts by rule or statute." Millstein v.Millstein, Cuyahoga App. Nos. 79617, 79754, 80184 — 80188, and 80963, 2002-Ohio-4783 at _37 (internal citations omitted). Appellant fails to assert any prejudice from the trial court's procedural error. In fact, the record reflects that appellant simply ignored the court's support order entirely, resulting in the Ohio and Florida properties going into foreclosure and necessitating an emergency order by the trial court to preserve the marital assets.
 {¶ 59} Additionally, appellant's request for a hearing and his motion for abatement of support were rendered moot on April 12, 2006 by the separation agreement. Item 11 specifically provides: *Page 19 
 {¶ 60} "Husband and Wife agree that each party has waived the right to receive spousal support from the other party, and that this provision is not modifiable. The court will not retain jurisdiction to modify this spousal support provision.
 {¶ 61} "The parties further agree that all temporary spousal support arrears are hereby waived."
 {¶ 62} The issue of temporary support having been settled between the parties, appellant's third assignment of error is overruled.
 {¶ 63} " IV. IT WAS REVERSIBLE ERROR RISING TO THE LEVEL OF A DENIAL OF DUE PROCESS FOR THE COURT TO TOTALLY FAIL TO RULE ON ANY MOTIONS TO COMPEL DISCOVERY AND TO INSURE THAT THERE WAS A FULL DISCLOSURE OF ASSETS AND LIABILITIES PRIOR TO THE ENTRY OF FINAL JUDGMENT. NO PRETRIAL STATEMENTS WERE FILED BY EITHER PARTY AND DISCOVERY WAS SUMMARILY CUT OFF BY THE COURT WITHOUT EVER INSURING THAT THERE HAD BEEN ANY EXCHANGE OF RELEVANT INFORMATION."
 {¶ 64} It is well established that a trial court enjoys considerable discretion in the regulation of discovery proceedings. State, ex rel.Daggett v. Gessaman (1973), 34 Ohio St.2d 55; Manofsky v. Goodyear Tire Rubber Co. (1990), 69 Ohio App.3d 663, 668. We will not reverse the judgment of the trial court on claimed errors in the discovery process absent a showing of a clear abuse of discretion. Generally, when a trial court fails to issue rulings on pending motions, the appellate court presumes *Page 20 
that the motions are overruled. Takacs v. Baldwin (1995),106 Ohio App.3d 196, 209.
 {¶ 65} Appellant argues that the "total lack of action by the trial court rises to the level of a constitutional denial of due process of law." The record shows that appellant filed motions to compel discovery pursuant to Civ.R. 37 on May 6 and May 17, 2005, relating to discovery requests he had served on March 2 and March 23, 2005. He filed a third motion to compel on September 8, 2005, relating to appellee's failure to appear for a deposition. There is no indication in the record that the trial court ruled on these motions. Therefore, we assume the trial court overruled them.
 {¶ 66} Furthermore, according to Civ.R. 37(E), appellant was required, before filing a motion to compel, to make a reasonable effort to resolve any discovery issues with appellee. Under this rule, a motion to compelmust be accompanied by a statement reciting the efforts made by counsel to resolve the matter. Id. None of appellant's motions complied with the procedural requirements of Civ.R. 37, therefore, there was no abuse of discretion by the trial court in failing to consider the merits of appellant's motions prior to overruling them.
 {¶ 67} We also find no error in the trial court ordering an end to discovery on August 10, 2006. As stated in that order, the case had been pending for more than two years and the parties had entered into a separation agreement in open court months earlier that settled the issues between them. Both parties attested to there being a relevant exchange of information by stating in open court on April 12, 2006 *Page 21 
that they had fully disclosed to each other all of their assets and liabilities. Finding no merit to appellant's arguments, we overrule appellant's fourth assignment of error.
 {¶ 68} "V. IT WAS REVERSIBLE ERROR FOR THE COURT TO DENY THE HUSBAND'S MOTION TO DISQUALIFY JOSEPH G. STAFFORD AS COUNSEL FOR THE WIFE BASED UPON THE UNCONTROVERTED EVIDENCE BEFORE THE COURT. THE HUSBAND HAD CONSULTED, BUT NOT EVENTUALLY RETAINED, THE WIFE'S COUNSEL PRIOR TO HIS ACCEPTANCE OF EMPLOYMENT BY THE WIFE."
 {¶ 69} On June 28, 2005, appellant filed a motion to disqualify Joseph G. Stafford as counsel for his wife. Appellant stated no legal grounds for the disqualification in his motion, but did attach an affidavit to the motion in which he referenced some conversations he had with Stafford months prior to the filing of the divorce action, in the hallway of the courthouse, during which he discussed problems he was having with appellee. Appellant stated that he decided not to involve Stafford in the case because of the particular judge assigned to the case. Instead, appellant retained attorney Morton Kaplan as his legal counsel for the divorce. Appellant stated that he considered his conversations with Stafford to be attorney/client conversations. The trial court denied that motion on December 27, 2005, finding that appellant failed to meet his burden of proof that a conflict existed. Appellant filed an appeal of that denial with this court. That appeal was dismissed for lack of a final appealable order. The matter is now properly before this court. *Page 22 
 {¶ 70} Disqualification "is a drastic measure which should not be imposed unless absolutely necessary." Spivey v. Bender (1991),77 Ohio App.3d 17, 22, quoting Gould, Inc. v. Mitsui Mining Smelting Co.
(N.D.Ohio 1990), 738 F.Supp. 1121, 1126. See, also, Legal Aid Soc. ofCleveland v. WD Partners I, LLC, 162 Ohio App.3d 682, 2005-Ohio-4130. The trial court has wide discretion in the consideration of motions to disqualify counsel. Id. When reviewing a decision of the trial court to disqualify counsel, we apply an abuse of discretion standard. MentorLagoons, Inc. v. Teague (1991), 71 Ohio App.3d 719, 724.
 {¶ 71} A review of appellant's motion to disqualify filed in the trial court and his appellate brief on this issue demonstrates that appellant has failed to cite to even one source of legal authority as the basis for his claim for disqualification. App.R. 16(A)(7) requires the appellant to set forth "[a]n argument containing the contentions of the appellant with respect to each assignment of error presented for review and the reasons in support of the contentions, with citations to the authorities, statutes, and parts of the record on which appellant relies." There is not a single cite to the code, statute, or to any other legal authority in support of his claim for disqualification in either his motion or his appellate brief. If an argument exists that can support this assignment of error, it is not this court's duty to root it out. See Henley v. Henley, Wayne App. No. 05CA0053, 2006-Ohio-3336, citing Cardone v. Cardone (May 6, 1998), Wayne App. Nos. 18349 and 18673. We therefore disregard this assignment *Page 23 
of error. See App.R. 12(A)(2) and 16(A)(7). Appellant's fifth assignment of error is overruled.
 {¶ 72} "VI. JUDGE TIMOTHY M. FLANAGAN COMMITTED REVERSIBLE ERROR WHEN HE ENTERED ORDERS IN THIS CASE AFTER HE HAD RECUSED HIMSELF AND REASSIGNED THE CASE TO A VISITING JUDGE. HE FURTHER ERRED BY ENTERING AN ORDER IN A GENERAL DIVISION CASE WHICH ORDER WAS NEVER JOURNALIZED."
 {¶ 73} Just as in the prior assignment, appellant's argument on this assignment is completely devoid of citation to authorities or statutes in support of his position and we need not consider the merits of his argument for this reason. App.R. 12(A)(2) and 16(A)(7). We note, however, that Judge Flanagan is the administrative judge of the Cuyahoga County Court of Common Pleas, Domestic Relations Division, and as such was not completely without authority to enter orders after he voluntarily removed himself from the case. Pursuant to Sup.R. 4, as administrative judge of the domestic relations division, Judge Flanagan had authority and responsibility for control over the administration, docket, and calendar of that division and could enter orders where the assigned judge was not available and a delay in ruling would be prejudicial to the parties. See Rosenberg v. Gattarello (1976),49 Ohio App.2d 87.
 {¶ 74} We also must disregard appellant's argument relating to a "general division case" because no reference to that case appears in the record before us. Appellant attempts to place the matter before this court by attaching a copy of the *Page 24 
complaint and various entries from that case to his appellate brief. However, because the complaint and entries were not in the record below, we cannot consider them even though attached as exhibits to appellant's brief. See D B Immobilization Corp. v. Dues (1997),122 Ohio App.3d 50, 52-53. This court cannot consider matters dehors the record.State v. Ishmail (1978), 54 Ohio St.2d 402. An exhibit attached to an appellate brief and not filed with the trial court is not part of the record. In re Estate of Price, Cuyahoga App. No. 68628, citingMiddletown v. Allen (1989), 63 Ohio App.3d 443, 449. Appellant's sixth assignment of error is overruled.
 {¶ 75} This cause is reversed and remanded for further proceedings consistent with this court's opinion.
It is, therefore, ordered that said appellant recover of said appellee his costs herein taxed.
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
MELODY J. STEWART, JUDGE
COLLEEN CONWAY COONEY, P.J., and FRANK D. CELEBREZZE, JR., J., CONCUR
[1] Enza Roth v. Daniel M. Roth, Cuyahoga App. No. 87668, dismissed February 19, 2006.
[2] The record reflects that appellant's counsel was present and appellant appeared by telephone. *Page 1